[Cite as *In re J.C.*, 2022-Ohio-3326.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE J.C., ET AL.                    :

Minor Children                       :          Nos. 111077, 111078,
                                                      111149, 111150,
[Appeal by S.Y.C, Mother,            :          111151, and 111152
and J.V.C., Father]

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
             AND REMANDED
**RELEASED AND JOURNALIZED:** September 22, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. CU-16101850 and CU-16101851

---

### *Appearances:*

Jay F. Crock, *for appellant/cross-appellee.*

Hans C. Kuenzi, *for appellee/cross-appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant/cross-appellee S.Y.C. ("Mother") filed four appeals and plaintiff-appellee/cross-appellant J.V.C. ("Father") filed two cross-appeals. This court, sua sponte, consolidated into one appeal Mother's four appeals

and Father's two appeals because all of the appeals share the same record and arise from the same lower court proceeding. *See* App.R. 3(C)(3).[1]

{¶ 2} Mother appeals the trial court's decisions denying her custody of the minor children, J.C. and G.C. ("the children"); decreasing her visitation with the children; failing to award attorney fees; and of calculating child support. Father appeals the trial court's contempt order and child support calculations. We affirm in part, reverse in part, and remand.

## I. Facts and Procedural History

{¶ 3} The facts and procedural history are identical for all appeals. Mother originally had custody of the children and lived with Mother's parents, while Mother commuted to medical school. Mother and the children moved to Columbus, Ohio when Mother began her residency; per court order, she was to transport the children to Father for 16-hour visits each week.

{¶ 4} In June 2009, Mother accused Father of abusing her and J.C., and Mother refused to allow Father his visitation time. Both parties filed various motions, and ultimately the court determined that shared parenting was not feasible in this case, given the geographical distance between the parents and the court's conclusion that Mother was not likely to honor court-ordered parenting time with Father.

---

[1] CA-22-111077, CA-22-111078, CA-22-111149, CA-22-111150, CA-22-111151, and CA-22-111152 were consolidated into one case.

{¶ 5} On December 22, 2009, the Lake County Juvenile Court awarded Father sole custody and residential status of the children. As a result of this determination, Mother was designated as the child support obligor and ordered to pay $1,181.97 per month in child support. On September 17, 2012, Mother filed a motion to modify her visitation with the children, and that motion was granted on September 6, 2013. Mother's child support obligation was modified to $626.23 per month.

{¶ 6} However, because of a typographical error adopted by the court, the child support was modified to $626.23 per month, per child, for a total of $1,252.46 a month. The magistrate journalized the incorrect child support amount of $1,252.46 even though the Lake County Child Support Enforcement Agency filed a document with the court demonstrating the correct amount of $626.23 per month. On October 16, 2015, Mother filed motions to waive and/or recalculate child support and to share federal tax credits.

{¶ 7} On December 11, 2015, Mother filed a motion to transfer the case to Cuyahoga County from Lake County. The motion was granted, and Mother filed another motion to share federal tax credits and to waive or recalculate the child support order. On December 5, 2018, the Cuyahoga County Juvenile Court held a hearing on Mother's motions. On April 13, 2020, the trial court found that the original child support order of $626.23 per month, per child, was in error, and the order should have awarded $626.23 per month.

{¶ 8} Accordingly, the trial court ordered that Mother's motions to waive or recalculate the child support order and her motion to share the federal tax credits were granted, effective from December 5, 2018, not from October 16, 2015, when Mother originally filed her motion. The trial court reduced Mother's child support obligation to $0. The trial court also ordered that Father repay Mother the overpayment of child support in the amount of $11,742.00 per child that Father received from October 16, 2015, to December 4, 2018, within 30 days of the date of its order. Father was also ordered to repay Mother any overpayment of child support he received after December 5, 2018.

{¶ 9} The court also ordered that pursuant to R.C. 3119.30(B)(1), Mother and Father were to each carry private health insurance for the children to meet the medical needs of the children while in their custody. Finally, the court ordered that Mother may claim G.C. as a dependent for federal income tax purposes, beginning with tax year 2019, while Father may claim J.C.

{¶ 10} In 2019, Mother filed an appeal assigning five errors for this court to review.

1. The trial court erred by failing to consider the significant and extensive facts presented to find a change in circumstances in the residential parent and the lives of the children against the manifest weight of the evidence and prevailing case law.

2. The trial court erred by failing to find that a reallocation of parental rights is in the children's best interest.

3. The trial court erred by ordering that Father could move anywhere under the jurisdiction of the trial court, in clear violation of R.C. 3109.051(G)(1).

4. The trial court erred by failing to take and consider evidence dating back to the prior custody decree of December 22, 2009.

5. The trial court erred by refusing to allow Mother to fully prosecute her case.

{¶ 11} This court held, in *In re J.C.*, 8th Dist. Cuyahoga Nos. 107292 and 107294, 2019-Ohio-107 ("*J.C. I*"), "the court abused its discretion by not considering evidence dating back to December 22, 2009, to determine whether there has been a change of circumstances pursuant to R.C. 3109.04(E)(1)." *Id.* at ¶ 22. Additionally, this court held that "the court committed prejudicial error by not considering facts that occurred since the prior custody decree when concluding that there was no change in circumstances," and "that the court's journal entry is inconsistent with R.C. 3109.051(G)(1)." *Id.* at ¶ 30 and 33.

{¶ 12} In 2021, Father filed an appeal assigning four errors for this court to review.

1. The trial court erred in modifying Mother's child support obligation in the absence of a substantial change in circumstances not contemplated by the parties when the 2013 child support order was issued.

2. The trial court nevertheless abused its discretion by modifying Mother's support obligation to $0.

3. The trial erred in ordering him to repay Mother for overpayment of child support.

4.   The trial court erred in awarding Mother the right to claim G.C. as a dependent for federal income tax purposes for tax year 2019 and going forward.

{¶ 13} In response, Mother filed a cross-appeal assigning seven errors for our review.

1.   The trial court erred and abused its discretion by failing to make the effective date of the child support modification retroactive to the date the appellant filed her motion to modify on October 16, 2015.

2.   The trial court erred and abused its discretion by failing to award appellant child support.

3.   The trial court erred and abused its discretion by failing to consistently designate the obligor.

4.   The trial court erred and abused its discretion by failing to order that the share of federal tax credits begin retroactive to the filing date.

5.   The trial court erred and abused its discretion by failing to list the specific provisions for regular, holiday, vacation parenting time, and special visiting in accordance with Ohio Revised Code.

6.   The trial court erred and abused its discretion by failing to properly determine the person responsible for the health care coverage of the children.

7.   The trial court erred and abused its discretion by failing to properly order health care expenses under R.C. 3119.32.

{¶ 14} In Father's 2021 appeal, this court, in *In re J.C.*, 8th Dist. Cuyahoga Nos. 109745 and 109746, 2021-Ohio-2450 ("*J.C. II*"), affirmed the trial court's decision and overruled all four of Father's assignments of error. In Mother's 2021

cross-appeal, this court, in *In re J.C.*, 8th Dist. Cuyahoga Nos. 109747 and 109748, 2021-Ohio-2451 ("*J.C. III*"), held that "the trial court abused its discretion when it failed to make the effective date of the child support modification retroactive to the date that Mother filed her motion to modify child support on October 16, 2015." *Id.* at ¶ 13. This court remanded to the trial court to determine Father's child support obligation to Mother and to designate Father as the obligor and Mother as the obligee. *Id.* at ¶ 21-22. Additionally, this court remanded to the trial court to designate Mother as the sole provider of health insurance for the children and to allocate health care expenses between Mother and Father. *Id.* at ¶ 28 and 30.

{¶ 15} Upon this court's remand, the trial court held a hearing May 5-7, 2021, and an in camera interview of J.C. on May 14, 2021. The purpose of these proceedings was to determine issues of child support and tax credits.

{¶ 16} Additionally, the trial court made determinations on motions previously filed by both Mother and Father. The trial court also made determinations from the matters remanded to the trial court from *J.C. I, J.C. II,* and *J.C. III*.

{¶ 17} The trial court, in its journal entry for this instant case, stated, "Upon due consideration of the pending matters as of May 5, 2021, and appellate decisions, the Court heard the testimony and evidence from May 5-7, 2021, and considered the evidence dating back to 2012 as presented by the parties." Journal entry No. 0915224962, p. 2 (Nov. 17, 2021).

{¶ 18} The trial court addressed Mother's 2015 motion for custody and the pending matters from the former appeals in four parts: 1) allocation of parental rights and responsibilities; 2) modify parenting time rights; 3) contempt issues, motions to show cause, and compel parenting time; and 4) attorney fees and expenses related to litigation. In its journal entry, the trial court noted that attorney fees and litigation expenses would be determined by a separate order.

{¶ 19} Regarding parental rights and responsibilities, the trial court, in its journal entry, stated:

> Father is designated as the residential parent and legal custodian of the parents' two children, mother has parenting time for one week on a weekly, rotating basis, vacation, days of special meaning and holidays pursuant to, Lake County Juvenile Loc.R. V. Mother has a parental right daily telephone contact, each evening between 6:00 and 8:00 p.m.; access to records under the same terms and conditions under which access is provided to father pursuant to R.C. 3109.051(H); that the possessory parent keep the other parent informed of any organized activity; that the possessory parent is to make sure the child attends all scheduled activities, and is responsible for the oversight of all homework the child may have during each parent's period of possession and for the homework to be returned to school in a timely fashion.

Journal entry No. 0915224962 (Nov. 17, 2021).

{¶ 20} As it relates to modifying parenting time rights, the trial court, in its journal entry, stated:

> Based on facts that have arisen since the prior decree, a change of circumstance has occurred, necessitating a modification of the current orders to serve the best interest of the children; that the modifications should consist of continuing father's designation of residential parent and legal custodian, including residential parent for school purposes;

that the parenting and parenting time order with local (court) guidelines and parenting provisions that better delineate parental rights, responsibilities and duties of the parents; mandate continued counseling for child and add therapeutic goals to address cognitive distortions and development and use of coping skills to negotiate the two household environments and relationships therein, expand days of special meaning to include siblings and other family supports; provide uninterrupted periods for vacation in weekly and/or bi-weekly increments, and itineraries when the children travel with each parent; specify transportation responsibilities for pick up and drop off; eliminate daily phone calls and assign specific days for parents to contact the children with unlimited phone contact from the child to a parent (within household parameters and rules regarding phone use); balance interpersonal demands for more productive communication between the parents; and provide opportunities to exercise quality communication and time to be spent between the children and their mother.

Journal entry No. 0915224962, p. 10 (Nov. 17, 2021).

{¶ 21} In 2015, 2016, 2019, and 2021, Mother filed numerous motions to show cause alleging that Father ignored the trial court's rulings regarding phone calls, notifications of medical appointments, access to school records, and information about the children's homework. Mother alleged that Father failed to ensure the children attended scheduled activities, failed to notify Mother of changes in appointments and activities, and failed to inform Mother of changes to times of activities during her parenting time.

{¶ 22} Mother also filed motions for attorney fees and to compel make-up parenting time relating to holiday, spring, summer, and Christmas breaks. Mother requested that the trial court find Father in contempt for failure to comply with court orders regarding parenting time. The trial court, in its journal entry, stated:

> Based on the testimony and evidence presented, the court finds that based on the totality of the evidence, father failed to comply with the court's orders relative to mother's parenting rights for parenting time, daily phone calls, access to information, attendance at organized activities, and oversight of homework, failed to ensure the child attended all scheduled activities, and for failing to notify mother of changes in appointments and activities so she may timely adjust her schedule, particularly during her parenting time.

Journal entry No. 0915224962, p. 11 (Nov. 17, 2021).

{¶ 23} The trial court found Father in contempt of court for failing to comply with the court's orders regarding parenting time and failing to inform Mother of the children's medical appointments. The trial court also ruled that in order to purge his contempt, Father should pay a portion of Mother's attorney fees and ordered that Father make up parenting time for the children with Mother.

{¶ 24} In response to our decision regarding child support in *J.C. III*, the trial court recalculated child support and modified Father's support order to $0. However, in regard to Mother, the trial court modified the support obligation to $80 per month, which is the minimum child support order by statute. The trial court also terminated Father's child support obligation to Mother and designated Mother as the obligor.

{¶ 25} Mother filed this appeal assigning six errors for our review:

1. The trial court abused its discretion and went against the manifest weight of the evidence in denying Mother's motion for custody of the minor children;

2. The trial court abused its discretion in decreasing Mother's visitation order;

3. The trial court failed to follow the remand of this court in at least five different instances;

4. The trial court erred in awarding the full amount of requested attorney fees to Mother;

5. The trial court erred in failing to award proper contempt remedies; and

6. The trial court abused its discretion in its selection of new numbers for each child support calculation and issuing a sua sponte change of obligor and selection of start date.

{¶ 26} In response, Father filed a cross-appeal assigning three errors for our review:

1. The trial court erred in finding Father to be in contempt of its prior order;

2. The trial court erred in is formulation of orders by which Father could purge his contempt; and

3. The trial court erred in its calculation of Mother's child support obligation to Father.

## II. Motion for Custody

### A. Standard of Review

{¶ 27} "The discretion of a trial court is broad in custody proceedings." *In re A.Z.*, 8th Dist. Cuyahoga No. 108627, 2020-Ohio-2941, ¶ 5, citing *In re S.R.L.*, 8th Dist. Cuyahoga No. 98754, 2013-Ohio-3236, ¶ 17.

"A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 17-18 (2d Dist.), citing *Black's Law*

*Dictionary* 11 (8 Ed.Rev.2004). When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983)."

*Id.*, quoting *id.*

{¶ 28} "'In conducting our review, we must make every reasonable presumption in favor of the trial court's findings of fact.'" *Id.* at ¶ 6, quoting *In re S.R.L.* at ¶ 18. "We give deference to the trial court as the trier of fact because it is 'best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *id.*

## B. Law and Analysis

{¶ 29} In Mother's first assignment of error, she argues that the trial court abused its discretion by denying her motion for custody of the children and allowing Father to maintain custody. Mother contends that Father has been repeatedly found in contempt for violation of court orders regarding visitation, provisions of holiday and vacation time, telephonic contact, access to children's medical and school records, and has displayed a desire to replace Mother with his new wife.

{¶ 30} R.C. 3109.04 governs the modification of shared parenting plans. A party must demonstrate the existence of changed circumstances; that modification is in the child's best interest; and that the advantages of granting the modification

outweigh any harm likely to be caused by the change. *In re S.R.L.*, 8th Dist. Cuyahoga No. 98754, 2013-Ohio-3236, at ¶ 19, citing R.C. 3109.04(E)(1)(a).

**{¶ 31}** R.C. 3109.04(E)(1)(a) provides:

(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

*Id.*

**{¶ 32}** R.C. 3109.04 "'creates a strong presumption in favor of retaining the residential parent.'" *Sites v. Sites*, 4th Dist. Lawrence No. 09CA19, 2010-Ohio-2748, ¶ 17, quoting *Alessio v. Alessio*, 10th Dist. Franklin No. 05AP-988, 2006-Ohio-2447, ¶ 11. "The statute thus prohibits a trial court from modifying a prior allocation of

parental rights and responsibilities unless the court makes a threshold finding that a change in circumstances has occurred." *Id.*, citing *In re Braydon James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 15; *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997). "Without this threshold change in circumstances finding, a court need not proceed with an analysis of the child's best interests under R.C. 3109.04(E)(1) or with any of the factors outlined in R.C. 3109.04(E)(1)(a)." *Id.*, citing *Cowan v. Cowan*, 4th Dist. Washington No. 04CA5, 2004-Ohio-6119, ¶ 16.

{¶ 33} In addition,

> [a] change in circumstances generally means that an event, occurrence, or situation has arisen since the prior decree that has materially and adversely affected the child. However, this change in circumstances cannot be slight or inconsequential. Rather, it must be substantive and significant. The requirement for finding a substantive and significant change in circumstances is to "'spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. [R.C. 3109.04(E)] is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" *Davis,* 77 Ohio St.3d at 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (1982).

(Citations omitted.) *Id*. at ¶ 18.

{¶ 34} The trial court determined that a change of circumstances had occurred since Mother filed her motion for custody in 2016 and 2019. The trial court considered the facts that have changed or arose since the last custody order on September 6, 2013, such as the children's ages when they choose the custodial

parent, the wishes of the children, and whether their reasoning ability to choose is a substantial change in a material circumstance that would justify a further inquiry into the best interest of the children. The trial court noted that the passage of the children from when they were babies to adolescents is a sufficient change of circumstances to warrant the question of whether it is in the best interest of the children to remain with their Father or switch custodial rights to Mother.

{¶ 35} "R.C. 3109.051 governs the modification of parenting time or visitation rights." *In re I.A.G.*, 8th Dist. Cuyahoga No. 103656, 2016-Ohio-3326, ¶ 15, citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45, 706 N.E.2d 1218 (1999). "It requires that court orders that address visitation be 'just and reasonable.'" *In re Bailey*, 1st Dist. Hamilton Nos. C-040014 and C-040479, 2005-Ohio-3039, ¶ 25. "Under R.C. 3109.051, a trial court is permitted to modify visitation rights if it determines that the modification is in the child's best interest." *Lisboa v. Lisboa*, 8th Dist. Cuyahoga No. 92321, 2009-Ohio-5228, ¶ 11; *see also In re A.J.*, 8th Dist. Cuyahoga No. 99881, 2013-Ohio-5737, ¶ 10. In determining whether a modification is in the children's best interest, the court is guided by the factors set forth in R.C. 3109.051(D).

{¶ 36} The trial court addressed the 16 factors set forth in R.C. 3109.051(D), considered the guardian ad litem's report, and conducted an in camera interview with the children. The trial court determined that neither parent has the capacity to

change the way in which they interact with one another, and it is negatively affecting the children. The trial court stated:

> The Court finds that the "capacity" of the parents has not changed. As a result, in other parenting areas such as establishing and abiding by co-parenting boundaries based on mutual respect and support, parenting skills and strategies, co-parenting or parenting skills and strategies for a teenager, stress, addressing individual well-being, supporting a healthy family and environment, the parents have not evolved or grown; and that the distinctions in parenting styles, home life, motivations, and personal choices, including resistance, avoidance, manipulation, entrenchment, lack of compromise and modeling of parents' behavior, are more evident and negatively affecting parent-child relationships for all parties.

Journal entry No. 0915224962, p. 5 (Nov. 17, 2021).

{¶ 37} Additionally, the trial court addressed Mother's proposed shared parenting plan that she filed in 2016. The trial court rejected Mother's plan as not in the best interest of the children because the trial court found that Mother failed to demonstrate that Mother and Father are able to make decisions jointly as to the considerations of shared parents. The trial court also noted the guardian ad litem's lack of confidence in Mother and Father being able to co-parent using a shared parenting plan.

{¶ 38} However, Mother contends that Father has repeatedly refused to abide by court orders and has interfered with her parenting time. She further argues that Father's interference should induce the trial court to awarding her primary custody. "It is beyond question that a custodial parent's interference with visitation by a noncustodial parent may be considered a change of circumstances that would

allow for a modification of custody."  *In re S.M.T.*, 8th Dist. Cuyahoga No. 97181, 2012-Ohio-1745, ¶ 7, citing *C.G. v. C.L.*, 8th Dist. Cuyahoga No. 90341, 2008-Ohio-3135, ¶ 13.  "This is because the court recognizes the importance of a child having a strong relationship with both parents, so an award of custody in favor of the parent 'who is most likely to foster a relationship between the child and the other parent is in the child's best interests.'"  *Id.*, citing Borris, *Interference with Parental Rights of Noncustodial Parent as Grounds for Modification of Child Custody*, 8 No. 1 DIVLIT 1 (1997).  "When a custodial parent so obstructs the visits between the child and the noncustodial parent, then the best interest of the child is no longer being served."  *Id.*

{¶ 39} The trial court considered Father's past behaviors when making its decision and stated:

> [T]he Court did consider whether or not a change of circumstance then existed because of repeated interference, or lack thereof, of the father would warrant a change in the allocation of parental rights and designation of custodial rights and responsibilities of the parents. * * * The court considered the willingness of father to cooperate concerning mother's relation and parenting time with the child(ren) along with his willingness to cooperate with court orders.  The Court finds that while father's actions may be contemptuous, they do not rise to the level of interference with mother's parenting rights or deprive the child(ren) of a meaningful relationship with the mother. Father did not overtly interfere, with mother's parenting time; that when [J.C.]'s relationship with mother began to deteriorate, he did speak with the child(ren) and provide suggestions to mother to begin to handle the situation (which she rejected), thus choosing to defer to the wishes of the child(ren).

Journal entry No. 0915224962, p. 8 (Nov. 17, 2021).

{¶ 40} The trial court went on to state that it "does not find father's passivity is sufficient to warrant the modification of his parental designation." Journal entry No. 0915224962, p. 9 (Nov. 17, 2021). The trial court further concluded that Mother's motions for the reallocation of parental rights and responsibilities are not supported by clear and convincing evidence to justify a modification. "'[T]he trial judge is in the best position to view the witnesses and observe the demeanor, gestures, and voice inflections so as to weigh the credibility of the presented testimony.'" *In re J.T.S.*, 12th Dist. Preble No. CA2014-09-009, 2015-Ohio-364, ¶ 21, quoting *In re Guardianship of Smith*, 12th Dist. Preble No. CA2002-12-012, 2003-Ohio-4247, ¶ 11. "This is because '[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *Id.*, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶ 41} We find that the trial court did not abuse its discretion in denying Mother's motion. Therefore, Mother's first assignment of error is overruled.

## III. Visitation Order

### A. Standard of Review

{¶ 42} "Generally, we review a trial court's decision on visitation under an abuse of discretion standard." *In re J.S.*, 11th Dist. Lake No. 2011-L-162, 2012-Ohio-4461, ¶ 19, citing *Clark v. Clark*, 11th Dist. Portage No. 2009-P-0096, 2010- Ohio-3967.

{¶ 43} "An appellate court may find that a trial court abused its discretion only if it finds that the decision of the trial court was unreasonable, arbitrary, or unconscionable." *In re Z.J.*, 8th Dist. Cuyahoga No. 108834, 2020-Ohio-383, ¶ 15, citing *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140 (1983). More recent decisions have held that "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19. An abuse of discretion may also be found "where a trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

## B. Law and Analysis

{¶ 44} In Mother's second assignment of error, she argues that the trial court abused its discretion in decreasing her visitation order. As previously stated above, "R.C. 3109.051 governs the modification of parenting time or visitation rights." *In re I.A.G.*, 8th Dist. Cuyahoga No. 103656, 2016-Ohio-3326, ¶ 15, citing *Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45, 706 N.E.2d 1218 (1999). "It requires that court orders that address visitation be 'just and reasonable.'" *Bailey (In re Bailey)*, 1st Dist. Hamilton Nos. C-040014 and C-040479, 2005-Ohio-3039, ¶ 25. "Under R.C. 3109.051, a trial court is permitted to modify visitation rights if it determines that the modification is in the child's best interest." *Lisboa*, 8th Dist. Cuyahoga

No. 92321, 2009-Ohio-5228, at ¶ 11; *see also In re A.J.*, 8th Dist. Cuyahoga No. 99881, 2013-Ohio-5737, ¶ 10. In determining whether a modification is in the children's best interest, the court is guided by the factors set forth in R.C. 3109.051(D).

{¶ 45} In considering Mother's motion, the trial court addressed the 16 factors set forth in R.C. 3109.051(D), considered the guardian ad litem's report, and conducted an in camera interview with the children. The trial court stated the children passing from the babies stage to now adolescents is a sufficient change of circumstances to warrant a question as to whether the best interests of the children would be served by change in visitation. The trial court also explained that the visitation order that was currently applicable does not take into account school records, adequate parenting time, notification of activities and appointments, and other responsibilities that are customary for successful co-parenting of children at this age.

{¶ 46} The trial court also stated that it has a responsibility to protect the best interests of the children and not the parent(s). "The central focus of any visitation order is the best interests of the children." *Ward v. Wilson*, 5th Dist. Ashland Nos. 16-COA-025 and 16-COA-027, 2017-Ohio-579, ¶ 36, citing *Kelm v. Kelm*, 92 Ohio St.3d 223, 226, 749 N.E.2d 299 (2001). "'A trial court may limit or restrict visiting rights of a party in order to further the child's best interest.'" *Id.*, quoting *Callender v. Callender*, 7th Dist. Carroll No. 03-CA-790, 2004-Ohio-1382,

¶ 31.   "The court has the 'power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.'" *Id.*, quoting *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, ¶ 18 (7th Dist.), and *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97 CA 239, 2000 Ohio App. LEXIS 2116 (May 12, 2000).

{¶ 47} Using the above standard, the trial court stated:

> The court takes no pleasure in deciding the court-imposed parenting structure which impacts a parent-child relationship to enjoy and provide for the nurturing and raising of the child(ren) until they reach the age of majority.   But when acrimony is overriding, and thus impairs the capacity of each parent or his/her ability to support and respect the needs of the other parent while the child is in the other parent's home and care, then the well-being and wishes of the children should take a more prominent role in the deliberations of the court.

Journal entry No. 0915224962, p. 10 (Nov. 17, 2021).

{¶ 48} The trial court considered each child's adjustment to their Father's home, their preferences, and other factors relating to the best interest of the child and modified the visitation order.

> Effective May 7, 2021, Mother is to have parenting time as follows: for the children together, on the first and third, weekends of each month from Friday at 7:00 (or immediately following a schedule event timely notified to mother as provided herein) to Sunday at 7:00 p.m.; Midweek parenting time every Wednesday from 5:30 - 8:30 p.m. alternating Mid-Week 1 and 3 to parenting time for [J.C.] and Mid-Week 2 and 4 for [G.C.], Week 5 Wednesday parenting shall include both children and any include mother's other child(ren).  Midweek parenting time is designed to provide for one-on-one time between mother and each child, and may include dinner, movie, spa, salon,

skating, shopping, and/or other activities planned by mother in consultation with the child(ren);

That, Mother shall have 4 weeks (28 days inclusive of weekends spent for vacation) of summer/vacation parenting time annually. This parenting time may be exercised in 4-day, one week, 10-day, up to 2-week uninterrupted increments, without scheduled parenting time for the other parent. Week long vacation must include a regularly, scheduled weekend parenting time for the vacationing parent and return of the child to the other parent by 7:00 p.m, to exercise weekend parenting time with the non-vacationing parent. Advance notification provisions shall be followed under section (E).

Days of Special Meaning, Holiday, Spring and Christmas Break and Vacation parenting times shall supersede weekend midweek parenting time.

That, Father shall be responsible for delivering the child(ren) for parenting time with mother. Mother shall return the child(ren) to father's home at the conclusion of each parenting time.

That, Mother shall have additional parenting time in accordance with the schedule set forth in Exhibit A and following orders: Days of Special Meaning shall include and are extended to birthdays of the child(ren)'s siblings; make-up parenting time as set forth herein.

The parties shall adhere and comply with the Miscellaneous Parenting Time Provisions of this Court along with the following Miscellaneous Provisions incorporated in Exhibit A, which in pertinent part, set forth the duties of the parents' regarding a Child's response to parenting time. Exercise of parenting time, Illness or injury to a child, Child's extra-curricular activities, Schoolwork, Telephone/Video Communications.

It is further ordered that telephone/video communication privileges of twice per week for mother may include twice during the weekdays between 7:00 - 8:30 p.m. or once during the week and one day on the weekend; and that the child(ren) may exercise with unlimited phone contact from the child to a parent (within household parameters and rules regarding phone use).

Journal entry No. 0915224962, p. 13-14 (Nov. 17, 2021).

{¶ 49} "If it is clear from the record the court considered the factors in R.C. 3109.051, even if the statute or the factors are not specifically referenced, we will not find an abuse of discretion." *Wilson*, 5th Dist. Ashland Nos. 16-COA-025 and 16-COA-027, 2017-Ohio-579, at ¶ 37, citing *In re Troyer*, 2010-Ohio-3276, 936 N.E.2d 102, ¶ 36 (7th Dist.). "'[I]t is not an abuse of discretion when it appears from the journal entry that some of the factors under that section were addressed.'" *Id.*, quoting *Bernard v. Bernard*, 7th Dist. Columbiana No. 00 CO 25, 2002 Ohio App. LEXIS 499 (Jan. 30, 2002).

{¶ 50} We find that the trial court did not abuse its discretion in modifying the parties' parenting time order because the trial court's decision was not arbitrary, unconscionable, or unreasonable. The trial court stated in its detailed journal entry that it had considered all of the best interest factors in entering a parenting time order between Mother and the children. Thus, the trial court did not abuse its discretion in modifying the children's visitation with Mother.

{¶ 51} Therefore, Mother's second assignment of error is overruled.

## IV. Failure to Comply with Appellate Court's Order

### A. Standard of Review

{¶ 52} "A trial court must follow a mandate from a reviewing court." *State v. Anthony*, 8th Dist. Cuyahoga No. 106240, 2018-Ohio-2050, ¶ 7, citing *State v. Gates*, 8th Dist. Cuyahoga No. 82385, 2004-Ohio-1453, ¶ 9; *State v. Bronston*, 8th

Dist. Cuyahoga No. 97558, 2012-Ohio-2631, ¶ 4; *State v. Carlisle*, 8th Dist. Cuyahoga No. 93266, 2010-Ohio-3407, ¶ 16. "Under the 'mandate rule,' a lower court must 'carry the mandate of the upper court into execution and not consider the questions which the mandate laid at rest.'" *Id.*, quoting *Carlisle*.

## B. Law and Analysis

{¶ 53} In Mother's third assignment of error, she argues that the trial court failed to comply with five different remand orders from *J.C. III*. First, she contends that the trial court failed to note the effective date of the healthcare expense allocation. Father concedes that the trial court failed to allocate between the parties' responsibility for payment of the uninsured and unreimbursed healthcare expenses of the children for the period of October 15, 2015, to May 7, 2021.

{¶ 54} In *J.C. III*, this court ordered the trial court to designate Mother as the sole provider of health insurance for the children. *Id.* at ¶ 28. It further ordered the trial court allocate health care expenses between Mother and Father, because the trial court did not assign responsibility to Mother or Father for payment of uninsured or unreimbursed health care expenses. *Id.* at ¶ 29, 30. Therefore, we order, again, the trial court to allocate health care expenses between Mother and Father and assign responsibility to Mother or Father for payment of uninsured or unreimbursed health care expenses for the period of October 15, 2015, to May 7, 2021.

{¶ 55} Second, Mother argues that the trial court failed to use the same financial information in the calculation of support that was used in the previous ruling. Specifically, she contends that the trial court erred by abandoning the 2020 values used to compute support. However, in *J.C. III*, we ordered the trial court to make the effective date of the child support modification retroactive to the date that Mother filed her motion to modify child support on October 16, 2015. *Id.* at ¶ 13. The trial court, in its journal entry, stated, "The Court further finds that the modification/deviation of child support to $0 is in the best interests of the child as father's support obligation exceeds the mother's obligation effective 10-16-2015."

{¶ 56} The trial court complied with this court's order. Therefore, this portion of Mother's argument is overruled.

{¶ 57} Third, Mother argues that the trial court failed to consider evidence dating back to December 22, 2009. Mother cites *J.C. I* in support of her contention, where this court states, "[W]e find that the court abused its discretion by not considering evidence dating back to December 22, 2009, to determine whether there has been a change of circumstances pursuant to R.C. 3109.04(E)(1)." *Id.* at ¶ 22. We find that the trial court considered all relevant evidence. The trial court was consistent in its journal entry that it determined there had been a change of circumstances pursuant to the statute. As the children are no longer babies, but adolescents, the trial court continually ruled that a change of circumstances had

occurred and reviewed all pertinent evidence. *See* journal entry No. 0915224962 (Nov. 17, 2021).

{¶ 58} Therefore, this portion of Mother's argument is overruled.

{¶ 59} Fourth, Mother argues that the trial court failed to admit and consider the report of the original guardian ad litem. In *J.C. I,* this court stated:

> In the case at hand, Mother's attorney attempted to introduce testimony and exhibits concerning events that occurred prior to 2012 or 2013, but the court ruled this evidence inadmissible. For example, the court refused to consider evidence of how many times Father moved with the children since being awarded custody of them; emails between Mother and Father showing their inability to communicate effectively; transcripts from prior court proceedings in this case; Father's use of different last names for the children; G.C.'s medical records from 2010; and the former guardian ad litem's report, which recommended shared parenting. This evidence is both relevant and admissible under R.C. 3109.04(E).

*Id.* at ¶ 25.

{¶ 60} Mother's contentions are misplaced. This court held that "the court committed prejudicial error by not considering facts that occurred since the prior custody decree when concluding that there was no change in circumstances." *Id.* at ¶ 30. However, in the last proceeding, the trial court considered the most current guardian ad litem's report and determined that there was a change of circumstances. The issues that were presented in *J.C. I,* have either changed or been updated to reflect the age of the children. The trial court considered the most relevant evidence in making its decision. Therefore, this portion of Mother's argument is overruled.

{¶ 61} Fifth, Mother argues that the trial court failed to issue a ruling complying with R.C. 3109.051(G)(1). Father concedes that the trial court failed to strictly comply with the statute by requiring that both parties file a notice of intent to relocate. R.C. 3109.051(G)(1) states:

> If the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. Except as provided in divisions (G)(2), (3), and (4) of this section, the court shall send a copy of the notice to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.

{¶ 62} Father is the residential parent. However, the trial court, in its journal entry, stated:

> Each parent shall file a notice of intent to relocate with this court prior to moving from the jurisdiction of the court. Unless otherwise ordered pursuant to O.R.C. 3109.051(G)(2), (3) and (4), a copy of such notice shall be mailed by the Court to the parent (or the other parent) who is not the residential parent upon receipt of the notice.

Journal entry No. 0915224962, p. 14 (Nov. 17, 2021).

{¶ 63} We find that the trial court erred in requiring both parents to file a notice of intent to relocate when R.C. 3109.051(G)(1) only requires the residential parent to file the notice. Therefore, as this portion of Mother's argument is sustained, we remand to the trial court to correct the journal entry to correctly reflect the language of R.C. 3109.051(G)(1).

## V.   Attorney Fees

### A.   Law and Analysis

{¶ 64} In Mother's fourth assignment of error, she argues that the trial court erred in denying her request for the entirety of her attorney fees without engaging in any analysis or providing justification for the reason for not awarding the full amount of attorney fees.   "The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees." *Bales v. Forest River, Inc.*, 8th Dist. Cuyahoga No. 107896, 2019-Ohio-4160, ¶ 19.   *See, e.g., Nordquist v. Schwartz*, 7th Dist. Columbiana No. 11 CO 21, 2012-Ohio-4571, ¶ 22 ("The requesting party bears the burden of proving evidence of any hours worked that would be properly billed to the client, proving the attorney's hourly rate, and demonstrating that the rate is reasonable.").

{¶ 65} In the trial court's journal entry, it stated that "[e]vidence as to Mother's motion for attorney's fees and/or expenses related to the litigation shall be determined by separate order."   Journal entry No. 0915224962, p. 2 (Nov. 17, 2021). Later, in the journal entry, the trial court noted that Father pay a portion of Mother's attorney fees as a way to purge the trial court finding him in contempt.   However, the trial court did not state how it determined Father's portion of Mother's attorney fees.

{¶ 66} "When making an attorney fee award, the trial court must 'state the basis for the fee determination' to allow for meaningful appellate review of the

attorney fee award." *Bales* at ¶ 22, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). "If a trial court's decision awarding attorney fees lacks sufficient explanation, an appellate court will reverse the award and remand the matter for the trial court 'to further elucidate its analysis.'" *Id.*, citing *Calypso Asset Mgmt., LLC v. 180 Indus., LLC*, 2019-Ohio-2, 127 N.E.3d 507, ¶ 29 (10th Dist.).

{¶ 67} Therefore, we reverse the attorney fees award and remand for the trial court to state the basis for the fee determination and determine the reasonableness of the fees. Mother's fourth assignment of error is sustained.

## VI. Contempt

### A. Standard of Review

{¶ 68} "When reviewing a finding of contempt, including a trial court's imposition of penalties, an appellate court applies an abuse-of-discretion standard." *In re J.A.P.*, 8th Dist. Cuyahoga No. 110591, 2022-Ohio-613, ¶ 15, citing *In re Contempt of Morris*, 110 Ohio App.3d 475, 479, 674 N.E.2d 761 (8th Dist.1996).

### B. Law and Analysis

{¶ 69} In these assignment of errors, we will address both Mother's fifth assignment of error and Father's first and second cross-assignment of errors of his cross-appeal. In Mother's fifth assignment of error, she argues that the trial court erred in failing to award proper contempt remedies. The trial court found Father in contempt for failing to comply with the court's order relative to Mother's parenting

rights for parenting time, day phone calls, access to information, attendance at organized activities, and oversight of homework. Father failed to ensure that the children attended all scheduled activities and failed to notify Mother of changes in appointments and activities so that she may timely adjust her schedule during her parenting time. To remedy his failure, the court stated that "Father should pay a portion of mother's attorney's fees in prosecution of her motions, and be ordered to provide make-up parenting time for the children." Journal entry No. 0915224962, p. 11 (Nov. 17, 2021).

{¶ 70} Further the court order,

> [i]t is ordered that Father is sentenced to 30 days at the county jail and a $250.00 fine for his contempt of Court. To purge his contempt, father shall pay the sum of $10,592.00 as and toward mother's attorneys fees for the prosecution of her motions, and provide make up visitation for weekend, holiday and Christmas and spring breaks is granted as follows: mother shall have extended overnight parenting time with child(ren) on the 3rd weekend of each month from 7:00 p.m. until Monday morning during the school year, and to 5:00 p.m. during the summer, from the date of this entry through December 1, 2023; that for calendar year 2022, mother shall have exclusive parenting time for the Labor Day weekend from Friday at 7:00 p.m. to Monday at 7:00 p.m., for the entire Spring Break 2022 and with Easter Sunday from 10:00 a.m. to 7:00 p.m. There shall be no interruption in parenting time between Spring Break and Easter Sunday.

Journal entry No. 0915224962, p. 15 (Nov. 17, 2021).

{¶ 71} Mother argues that this order was insufficient because Father denied the children from spending time with Mother for more than 180 days, and the trial court did not properly remedy all of the time missed. However, "[a]s recognized in

*Summe v. Summe*, 2d Dist. Montgomery Nos. 11452 and 11474, 1990 Ohio App. LEXIS 2286 (June 6, 1990): 'It is difficult to formulate a remedy to allow purging of contempt for violation of a visitation order.'" *C.G. v. C.L.*, 8th Dist. Cuyahoga No. 90341, 2008-Ohio-3135, ¶ 27. "Unlike a support arrearage case where the [violator] can pay the monetary amount and purge himself of any alleged contempt, a trial court cannot fashion a remedy to correct past visitation violations." *Id.* However, a trial court "can compel future compliance with the court-ordered visitation schedule and, thus, allow the [violator] to purge himself of any contempt." *Id.*

{¶ 72} Thus, several courts have recognized that the trial court cannot order a remedy that can return past visitations to Mother; a trial court can compel future compliance, which allows Father to purge himself of contempt. *Id.* at ¶ 28, citing *Smith v. Smith*, 70 Ohio App.2d 87, 92, 434 N.E.2d 749 (10th Dist.1980); *Caldwell v. Caldwell*, [4th Dist.] Gallia No. 02CA17, 2003-Ohio-1752; and *Bowers v. Bowers*, [10th Dist.] Franklin No. 90AP-130, 1990 Ohio App. LEXIS 5223 (Nov. 29, 1990). Mother's request that all of the parenting time days be returned to her is without merit.

{¶ 73} Therefore Mother's fifth assignment of error is overruled.

{¶ 74} In Father's first cross-assignment of error of his cross-appeal, he argues that the trial court erred in finding him to be in contempt of its prior order. "A juvenile court has authority to issue a contempt order for the failure to comply

with a visitation order pursuant to R.C. 2151.21 and 2705.031(A)." *In re J.A.P.*, 8th Dist. Cuyahoga No. 110591, 2022-Ohio-613, at ¶ 16.

{¶ 75} "'Contempt is 'a disregard of, or disobedience to, an order or command of judicial authority.'" *Id.*, quoting *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 106475, 2018-Ohio-4329, ¶ 52. "To establish contempt, a party must prove the existence of a valid court order, that the respondent had knowledge of the order, and a violation of the order." *Id.*, citing *In re K.B.*, 8th Dist. Cuyahoga No. 97991, 2012-Ohio-5507, ¶ 11. "Civil contempt must be established by clear and convincing evidence, i.e., the trier of fact must have a firm conviction or belief that the facts alleged are true." *Id.*, citing *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 19.

{¶ 76} Father argues that the trial court used a totality of the circumstances standard whether than by clear and convincing evidence. Father argues that Mother did not establish nor submit evidence that Mother's allegations were true. However, the standard is such that the trial court must have a firm conviction or belief that the facts are true. According to Father's admission, J.C. was not consistent with the visitation schedule as it pertained to Mother. The trial court determined that Father

> did not when able, ensure correctness or completeness of information for easy access and other court imposed responsibilities, knowing that he was not responsible for the children's needs during successive weeks. Lack of exuberance is no excuse, including his insincere efforts, or purported use of punishments, to encourage the child(ren), and particularly J.C.'s resistance to her parent's authority to provide for her care and parenting time as ordered by the court.

Journal entry No. 0915224962 (Nov. 17, 2021).

{¶ 77} In reviewing the record, including the journal entry and Father's testimony, we find that the trial court had a firm conviction or belief that Father did not comply with court orders regarding visitation with Mother. Therefore, Father's first cross-assignment of error is overruled.

{¶ 78} In Father's second cross-assignment of error of his cross-appeal, he argues that the trial court erred in its formulation of orders by which Father could purge his contempt. The trial court ordered Father to pay a portion of Mother's attorney fees. Father argues that the trial court did not determine the reasonableness of the fees charged. Father's contention is well-taken. Earlier in the opinion, we reversed the attorney fees award and remanded for the trial court to state the basis for the fee determination and determine the reasonableness of the fees.

{¶ 79} Father also argues that the trial court erred in requiring him to purge his contempt by providing make-up parenting time with Mother. Father argues that because the children have a contentious relationship with Mother, this order is not in the best interest of the children. However, as the trial court and guardian ad litem noted, both Father and Mother contributed to the deterioration of the relationship between the children and Mother. The guardian ad litem noted in his report that

the animosity and ill-will between Mother and Father has grown over the years. As previously stated:

> The Court finds that the "capacity" of the parents has not changed. As a result, in other parenting areas such as establishing and abiding by co-parenting boundaries based on mutual respect and support, parenting skills and strategies, co-parenting or parenting skills and strategies for a teenager, stress, addressing individual well beings supporting a healthy family and environment, the parents have not evolved or grown; and that the distinctions in parenting styles, home life, motivations, and personal choices, including resistance, avoidance, manipulation, entrenchment, lack of compromise and modeling of parents' behavior, are more evident and negatively affecting parent-child relationships for all parties.

Journal entry No. 0915224962, p. 5 (Nov. 17, 2021).

{¶ 80} Father has not demonstrated that the trial court's conditions are unreasonable or impossible as per the visitation schedule: the children are already spending time with Mother. "The trial court abuses its discretion in ordering purge conditions which are unreasonable or where compliance is impossible." *C.G. v. C.L.*, 8th Dist. Cuyahoga No. 90341, 2008-Ohio-3135, ¶ 25, citing *In re Purola*, 73 Ohio App.3d 306, 313, 596 N.E.2d 1140 (3d Dist.1991). "The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy." *Id.*, citing *Marx v. Marx*, 8th Dist. Cuyahoga No. 82021, 2003-Ohio-3536. The record does not show that father presented sufficient evidence at the hearing that the purge conditions were unreasonable. The make-up parenting time

ordered by the court granted Mother an extra overnight on one weekend per month and additional holiday time.

{¶ 81} Therefore, Father's second cross-assignment of error is overruled.

## VII. Child Support Modification

### A. Standard of Review

{¶ 82} "A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *J.E.M. v. D.N.M.*, 8th Dist. Cuyahoga No. 109532, 2021-Ohio-67, ¶ 22, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). "The trial court has considerable discretion in child support matters; absent an abuse of discretion, we will not disturb a child support order." *Id.*, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).

### B. Law and Analysis

{¶ 83} In Mother's sixth assignment of error, she argues that the trial court abused its discretion in its selection of a new number for each child support calculation and issuing a sua sponte change of obligor and selection of start date. In Father's third cross-assignment of error of his cross-appeal, he argues that the trial court erred in its calculation of Mother's child support obligation to him.

{¶ 84} First, Mother contends that the trial court erred by making her the obligor. "[T]he parent in a shared parenting plan with the greater child support obligation, after being given credit for the time that the child lives with him or her,

is the obligor parent * * *." *J.C. III*, 8th Dist. Cuyahoga Nos. 109747 and 109748, 2021-Ohio-2451, at ¶ 22, quoting *Leis v. Leis*, 2d Dist. Miami No. 96-CA-20, 1997 Ohio App. LEXIS 2638 (June 20, 1997). The recent parenting plan designates that the children are with Father more than Mother. Whereas, formerly Mother and Father had equal parenting time. As a result of the change of parenting time, the trial court ordered Mother to pay child support and that her obligation is the greater support obligation. Thus, Mother is correctly designated as the obligor.

{¶ 85} Second, both Mother and Father argue that the trial court incorrectly applied the Ohio Child Support Guidelines to determine the amount of child support Mother is required to pay. However, Mother and Father have a combined income exceeding $150,000. Also, there is a large disparity between Father's income of over $400,000 and Mother's income of around $250,000. "'Therefore, the trial court was required to determine the amount of appellant's child support obligation by considering the 'needs and the standard of living' of the parties' child and of the parties themselves. R.C. 3119.04(B)." *J.C. III* at ¶ 19, citing *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 13.

{¶ 86} As we stated in J.C. III:

When the combined annual income of both parents is greater than $150,000, the maximum annual income listed on the basic child support schedule, R.C. 3119.04 applies, which states in part:

If the combined annual income of both parents is greater than the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised

Code, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined annual income equal to the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised Code, unless the court or agency determines that it would be unjust or inappropriate and therefore not in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings. * * *

*Id.* at ¶ 14.

{¶ 87} In its journal entry, the trial court stated:

The Court further finds that as of 12/5/2018, father's income approximated $444,826.00 annually and mother's income approximated $262,988.00 annually, that the difference between the two incomes exceeds $150,000.00; that offsetting each income by $150,000.00, mother's income is reduced to $112,988.00; as a result of the calculations in the CSCW attached hereto as Exhibit 2, the mother, as obligor, would be obligated to pay a child support order of $1,534.72 per month for two children, which sum excludes a 2% processing fee, when private health insurance coverage is provided for the minor child in this order.

Journal entry No. 0915224962, p. 13 (Nov. 17, 2021).

{¶ 88} The trial court subtracted $150,000 from Mother's income, without explanation, but did not do the same to Father's. The trial court failed to address the disparity between Father's and Mother's income and also failed to determine the child support obligation using the correct standard.

{¶ 89} Therefore, we reverse the trial court's child support order and remand for the trial court to determine the amount of the child support obligation using the correct standard.

{¶ 90} Judgment affirmed in part, reversed in part, and remanded.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

FRANK DANIEL CELEBREZZE, III, J., and
MARY EILEEN KILBANE, J., CONCUR