[Cite as *Cireddu v. Clough*, 2013-Ohio-2042.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**


JAMES V. CIREDDU, et al.,                    :        **O P I N I O N**

        Plaintiff-Appellee,               :

    - vs -                                          :        **CASE NO.  2012-L-103**

STEPHANIE Y. CLOUGH,                    :

        Defendant-Appellant.            :


Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2008 CV 02029.

Judgment:  Affirmed.


*Hans C. Kuenzi*, Hans C. Kuenzi Co., L.P.A., 1660 W. Second Street, Suite 410, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Stephanie Y. Clough*, pro se, 8060 Wright Road, Broadwater Heights, OH 44147 (Defendant-Appellant).

*Rebecca Castell,* 12690 Opalocka Drive, Chesterland, OH 44026 (Guardian ad litem).


DIANE V. GRENDELL, J.

{¶1}    Appellant, Stephanie Y. Clough, appeals the judgment of the Lake County Court of Common Pleas, Juvenile Division, denying her Motion for Allocation of Parental Rights and Responsibilities/Motion for Shared Parenting.  The issues to be determined by this court are whether a court, when ruling on a motion to modify parental rights, may consider whether a change in circumstances is material and adverse to the children; whether a change in circumstances occurs when the non-custodial parent becomes

married, gets a new job, and moves closer to her children; and whether a best interest determination is necessary when the court decides there is no change of circumstances. For the following reasons, we affirm the decision of the trial court.

{¶2} On October 14, 2008, appellee, James V. Cireddu filed a Complaint with the Lake County Court of Common Pleas, Juvenile Division, to determine custody of his and Clough's two minor children, J.C., born on January 18, 2006, and G.C., born on December 11, 2008.

{¶3} Following a trial, on August 13, 2009, the magistrate issued a Magistrate's Decision and recommended granting legal custody of the children to Cireddu. In that Decision, the magistrate found that shared parenting was not feasible in this case, since Clough "is not likely to honor court-ordered parenting time with [Cireddu]." Additionally, the magistrate concluded that the geographical distance between the parents was not conducive to shared parenting. The trial court subsequently adopted this recommendation and Cireddu was granted legal custody.

{¶4} The custody determination was affirmed by this court in *Cireddu v. Clough*, 11th Dist. No. 2010-L-008, 2010-Ohio-5401.[1]

{¶5} Various other issues have been litigated by the parties following the custody determination, including a Motion to Determine Party Responsible for Transportation of the Minor Children, filed on February 25, 2010, a Motion to Establish Schedule of Telephone Contact filed on June 10, 2010, and a Motion to Compel Exchange of Information, filed on September 21, 2010.

---

1. The lower court's judgment was reversed in part, due to this court's conclusion that an error was made in stating the appropriate date for the commencement of child support payments.

2

{¶6} On May 10, 2011, the trial court issued a Judgment Entry ordering Cireddu to make the children available for telephone conversations, notify Clough if they are unavailable, and arrange for compensatory telephone contact when necessary. Clough's Motion to Compel Exchange of Information was also well-taken, requiring Cireddu to provide Clough with information about the children, including their school and medical information.

{¶7} The issue of the children's surname was also raised in the initial Complaint and, after several different hearings and judgments, the lower court held that the children would retain Clough's surname. The lower court's ruling was appealed to this court on September 9, 2011, and was affirmed. *Cireddu v. Clough*, 11th Dist. No. 2011-L-121, 2012-Ohio-2242, ¶ 27 (holding that the lower court did not abuse its discretion in determining that no further hearing was required on the matter of the children's surname).

{¶8} The present matter was initiated by Clough's Motion for Allocation of Parental Rights and Responsibilities/Motion for Shared Parenting, filed on August 18, 2011. In this Motion, she contends that there was a change in circumstances to warrant a modification of parental rights, including that Clough would be relocating to Cuyahoga County in July 2012.

{¶9} A hearing was held on Clough's Motion on April 24-25, 2012. The following pertinent testimony was presented.

{¶10} Cireddu testified that he did not believe that Clough should have custody or that a shared parenting plan should be adopted, since changing the custody arrangement would be disruptive to the children, who had a stable routine in his home. He explained that he and the two children live in Brecksville with his mother, Victoria

3

Cross-Cireddu, who watches the children while he is performing his duties as a medical resident. She would continue to watch the children when he began working as a cardiology fellow in the summer of 2012.

{¶11} Cireddu explained that he generally complied with the phone call schedule set by the court unless the children were asleep or otherwise unavailable to speak with Clough. He believed Clough made efforts to alienate the children from him and it was difficult to compromise with Clough on issues related to the care of the children.

{¶12} Clough testified that she had previously been living in Hilliard, Ohio, but was selling that residence and had just purchased a home in Broadview Heights, in J.C.'s current school district. She explained that she was married to Philip Shipman, a nurse, in 2010, and had a child with him, A.C. She would be starting a pulmonary critical care fellowship at MetroHealth Medical Center in Cleveland in July of 2012.

{¶13} Clough testified that she had difficulty receiving information about the children's medical treatment and activities from Cireddu. She also explained that the children were not always made available for phone calls by Cireddu at the time ordered in the court's prior Judgment Entry. She also noted that Cireddu had been using the improper surname for the children on several occasions. Clough believed shared parenting would have a positive impact on the children.

{¶14} Philip Shipman, Clough's husband, testified that he interacts well with the children. He also explained that he and Clough had difficulty obtaining information about the children from Cireddu and that Clough and Cireddu had difficulty communicating.

{¶15} Victoria Cross-Cireddu, Cireddu's mother, testified that she cares for the children while Cireddu is working. She explained that they have a good relationship with him.

{¶16} The guardian ad litem (GAL), Rebecca Castell, testified that she recommended the court adopt a shared parenting plan. She filed a GAL Report with the court, reaching the same conclusion on April 16, 2012. She believed that Clough had changed and is more willing to cooperate with Cireddu than she had been in the past. She also felt that Clough's move near Cireddu was a step toward working together with him. She believed that the changes Clough made constituted a change in circumstances for the purpose of modifying custody.

{¶17} A Magistrate Decision was issued on June 1, 2012, recommending that Clough's Motion for Allocation of Parental Rights/Motion for Shared Parenting be denied. In this decision, the magistrate made several pertinent factual findings. The magistrate found that Cireddu's mother had quit her job and provided full-time childcare for the children while Cireddu was working, and that J.C. was "doing well" in kindergarten. The magistrate also found that Clough had married her current husband Philip Shipman, who testified that he would coordinate his work schedule to care for the children as necessary if custody was altered. Clough and Shipman had a child, A.C., on August 1, 2011, whom J.C. and G.C. get along with well. Further, Clough and Shipman recently purchased a home in Broadview Heights, in the same school district where Cireddu and the children lived, and would begin employment on July 1, 2012, at MetroHealth, the same hospital where Cireddu would be working. The court further found that, based on the testimony before it, Clough and Cireddu continued to have difficulty accommodating each other.

5

**{¶18}** Regarding its Conclusions of Law, the magistrate concluded that, although there were changes in Clough's life, including having a child, becoming married, and moving close to J.C. and G.C., no unforeseen changes occurred with the residential parent or the children, such that a legal change in circumstances could be found for the purposes of modifying custody. The magistrate also found that, under this court's precedent, any change must have a material and adverse effect on the children, which did not occur. The court concluded that it need not review the best interest issue since there was no change in circumstances.

**{¶19}** On August 2, 2012, Clough filed Supplemental Objections to the Magistrate Decision and a Motion to Disqualify Magistrate Bell. She argued that the magistrate misstated various facts and did not properly apply the change-of-circumstances law. Cireddu filed a Brief in Opposition on August 15, 2012, arguing that the law was properly applied in this matter.

**{¶20}** On August 21, 2012, the trial court issued a Judgment Entry finding the Objections to the Magistrate Decision to be well-taken in part, to clarify a few misstated facts. The remaining objections were overruled and the court denied the Motion to Disqualify Magistrate Bell. The trial court adopted the Magistrate Decision and denied the Motion for Allocation of Parental Rights and Responsibilities/Motion for Shared Parenting on August 22, 2012.

**{¶21}** Clough timely appeals and raises the following assignments of error:

**{¶22}** "[1.] The trial court erred in interpreting that §O.R.C. 3109.04(E)(1)(a), specifying the requirements for a change in circumstances in order to change a previous custody decree, includes a condition that the changes must be material [and] adverse to the children.

6

{¶23} "[2.] The trial court erred and abused its discretion unreasonably, arbitrarily, and unconscionably by failing to consider the extensive facts presented to find a change in circumstances in the residential parent and the lives of the children against the manifest weight of the evidence.

{¶24} "[3.] The trial court erred and abused its discretion unreasonably, arbitrarily, and unconscionably by failing to consider that the best interests of the children are paramount and the supreme determinant in all decisions."

{¶25} In her first assignment of error, Clough argues that the lower court improperly applied the change-of-circumstances law under R.C. 3109.04. Specifically, she asserts that the magistrate considered whether the change in circumstances was materially adverse to the children and that the statute does not allow a court to consider this factor.

{¶26} Generally, in determining issues of custody, an abuse of discretion standard applies. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). However, in this assignment of error, since the issue raised by Clough relates to whether the lower court applied the appropriate law or legal standard, it is a question of law, which is reviewed de novo. *In re J.S.*, 11th Dist. No. 2011-L-162, 2012-Ohio-4461, ¶ 19, citing *Ivancic v. Enos*, 11th Dist. No. 2011-L-050, 2012-Ohio-3639, ¶ 48.

{¶27} In the present matter, the Magistrate Decision stated the following regarding the material and adverse change element, the application of which is disputed by Clough: "[T]he law in the Eleventh Appellate District is that any change must have a "material and adverse effect" upon a child. Assuming arguendo that this Hearing Officer were to conclude that a change of circumstances had occurred, the evidence presented did not establish that there had been any adverse material change with the children."

7

**{¶28}** In order to determine whether the proper law was applied in this matter, we must consider the statutory law and cases involving the modification of parental rights. R.C. 3109.04(E) sets forth the procedure for modifying a prior decree allocating parental rights and responsibilities for the care of children. R.C. 3109.04(E)(1)(a) states that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree * * *, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."

**{¶29}** In applying the change of circumstances prong of R.C. 3109.04(E)(1)(a), this court has held on many occasions that "[a] change of circumstances 'is intended to denote an event, occurrence, or situation which has a material and adverse effect upon a child.'" (Emphasis deleted.) *Haskett v. Haskett*, 11th Dist. No. 2011-L-155, 2013-Ohio-145, ¶ 35, citing *Schiavone v. Antonelli*, 11th Dist. No. 92-T-4794, 1993 Ohio App. LEXIS 5891, *9 (Dec. 10, 1993); *Makuch v. Bunce*, 11th Dist. No. 2007-L-016, 2007-Ohio-6242, ¶ 12. While Clough takes exception with the lower court's application of this standard, it was clearly following the precedent of this court's foregoing decisions.

**{¶30}** Multiple other districts have also applied the material and adverse analysis in addressing change of circumstances cases under R.C. 3109.04. *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551 (7th Dist.2000); *D.W. v. T.R.*, 6th Dist. No. L-11-1099, 2012-Ohio-614, ¶ 16; *In re S.M.T.*, 8th Dist. No. 97181, 2012-Ohio-1745, ¶ 6.

**{¶31}** We note that Clough takes issue with the lower court applying the law of this district and asserts that there "is only one law in the statute" and that is the law of

8

the Legislature. However, the "lower court must apply controlling precedent." *State v. Hardesty*, 4th Dist. No. 07CA2, 2007-Ohio-3889, ¶ 14. Also, as this court has noted, "R.C. 3109.04 does not define 'changes in circumstances'" and, therefore, courts have established though the case law that the phrase denotes an event "'which has a material and adverse effect upon a child.'" (Citation omitted.) *Dragon v. Dragon*, 11th Dist. Nos. 2011-A-0037 and 2011-A-0039, 2012-Ohio-978**,** ¶ 12.

{¶32} Clough argues that in 1990, the statute relating to the modification of custody changed, and certain portions were removed. She asserts that the foregoing cases cite a case decided under the prior statute, *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist.1982), for the proposition that the change of circumstances should be material and adverse, and do not take into consideration the change in the statute.

{¶33} Initially, we note that there was never specific language in R.C. 3109.04 stating the material and adverse element, either in the statute prior to the amendment in 1990 or in the present statute, but again emphasize that it was developed through the case law, as discussed above. The language referenced by Clough as being removed was contained in R.C. 3109.04(B)(1)(c), which is equivalent to the present R.C. 3109.04(E)(1)(a)(iii), and stated that "the child's present environment endangers significantly his physical health or his mental, moral, or emotional development."[2] Clough fails to explain how the removal of such language has an impact on the adverse and material analysis. Nothing in the removal of the foregoing language is related to the case law of various courts that a change of circumstances should be adverse to the

---

2. The requirement that "the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child" remained and is still present in R.C. 3109.04(E)(1)(a)(iii).

9

children or has any relation to this element. Further, such analysis by the courts is consistent with R.C. 3109.04(E)(1)(a)'s present requirement that a change must be in the circumstances of the child or the child's residential parent. Such a change would generally be a negative or adverse one, otherwise no change in custody would be warranted.

{¶34} We would also emphasize that this court explicitly noted in *Schiavone*, decided in 1993, that R.C. 3109.04 had changed and recognized that the requirement under the previous version, that the child's present environment significantly endangered his or her health or development, was deleted. *Schiavone*, 1993 Ohio App. LEXIS 5891, at *8, fn. 1. In light of this analysis, the court still applied the material and adverse requirement under the change of circumstances analysis and made no finding that the change in the statute impacted the case law as to this issue. Based on the foregoing, we cannot find that the lower court erred in applying such analysis in its decision.

{¶35} The first assignment of error is without merit.

{¶36} In her second assignment of error, Clough asserts that the lower court erred in finding no change of circumstances. Specifically, she maintains that the changes in her life, including moving closer to the children, her marriage, the birth of a new child, and her new employment in the area, created a change of circumstances. She also argues that Cireddu's failure to allow her to have phone contact with the children, failure to provide her with medical and school information, and his attempts to "frustrate" her visitation, constituted a change in the children's circumstances.

{¶37} Cireddu argues that the testimony shows that the children are doing well in their current home and there was no evidence to support a change of circumstances.

10

**{¶38}** "In determining whether a [change in circumstances] has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her -- including many of the factors in this case -- and such a decision must not be reversed absent an abuse of discretion." (Citation omitted.) (Emphasis deleted.) *Smith v. Smith*, 11th Dist. No. 2009-T-0064, 2010-Ohio-3051, ¶ 11.

**{¶39}** As noted above, pursuant to R.C. 3109.04(E)(1)(a), the party seeking a modification of a prior decree allocating parental rights and responsibilities must show "that a change has occurred in the circumstances of the child" or "the child's residential parent." "A change in circumstances is a threshold requirement intended to provide some stability to the custodial status of the child." *Smith* at ¶ 11, citing *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 15. Appellate courts, however, "must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it is necessary for the best interest of the child." *Davis*, 77 Ohio St.3d at 420-421, 674 N.E.2d 1159. "The change in circumstances necessary to justify a modification of custody 'must be a change of substance, not a slight or inconsequential change.'" *In re S.B.*, 11th Dist. No. 2010-A-0019, 2011-Ohio-1162, ¶ 85, citing *Davis* at 418.

**{¶40}** At trial, the major arguments raised by Clough's counsel related to changes in Clough's life. Clough argues that these changes included moving near her children, becoming married, getting a new job, and having a new baby. Each of these is a change to *her* circumstances, however. As stated in R.C. 3109.04, the change must occur "in the circumstances of the child" or "the child's residential parent." This court

11

held in *Walsh v. Walsh*, 11th Dist. No. 2004-G-2587, 2005-Ohio-3264, that a change in the non-custodial parent's "residence is not a factor to be considered under R.C. 3109.04(E)(1)(a). The only factors applicable in the instant case are changes in facts relating to the children or the residential parent; changes relating to the non-custodial parent are irrelevant." *Id.* at ¶ 19.

{¶41} Clough provides several cases to dispute that these personal changes in her life cannot constitute a change in circumstances. However, each of these cases are distinguishable. In *Jones v. Jones*, 4th Dist. No. 06CA25, 2007-Ohio-4255, a change in circumstances was found because there was evidence that the children were unhappy with their current living arrangement, circumstances which are not present in this case. In *Rodkey v. Rodkey*, 8th Dist. No. 86884, 2006-Ohio-4373, the appellate court specifically held that the change of circumstances analysis did not apply, due to provisions in the existing shared parenting plan. Thus, it cannot apply to the present case, where the change of circumstances is the only issue before this court. Finally, in *Alessio v. Alessio*, 10th Dist. No. 05AP-988, 2006-Ohio-2447, a change of circumstances was found when the residential parent moved away from the other parent, and her new husband's job created a risk of future moves. These were changes relating to the residential parent, unlike in the present matter.

{¶42} Further, while the changes in Clough's life may have some effect on the children's lives, it cannot be said that the trial court abused its discretion in determining that the changes did not rise to the level required for a change in circumstances under R.C. 3109.04. Even if the changes do affect the children to some degree, they are not material and adverse, since they relate to their mother living closer, and having a new sibling. As was held by the trial court, no material and adverse effect had occurred at

the point of the trial, and "[t]he children, by all accounts, are doing well in their present environment." Clough also agreed in her testimony that the children were "well-cared for."

{¶43} Clough also cites the passage of time and aging of the children as a relevant change. However, it cannot be held that "the mere passage of time since the original decree would constitute a sufficient change of circumstances, lest courts become timekeepers of child custody arrangements and be called on to 'restart the clock' in favor [of] the parent whose whim it is to change custody." *Andrews v. Andrews*, 11th Dist. No. 2005-T-0121, 2006-Ohio-4942, ¶ 40.

{¶44} Clough cites *Tolbert v. McDonald*, 3rd Dist. No. 1-05-47, 2006-Ohio-2377, as justification for considering a passage of time and a change in the age of the children. In that case, the court concluded that the change in the children's age was a factor to consider, when there was a five year gap between the custody determination and filing of a motion for change of custody, since the child "changed" from an infant to a school-aged child. *Id.* at ¶ 33. That case is distinguishable, given that, in the present matter, custody was granted to Cireddu in the final judgment by the lower court on December 22, 2009, and Clough's Motion for Allocation of Parental Right and Responsibilities was filed a little over a year and a half after this custody determination was made. We cannot conclude that the passage of that short period of time can be a change in circumstances, especially given our finding that a passage of time is generally not sufficient to warrant a change in circumstances.

{¶45} Clough also raises several other issues that she believes warrants a finding of a change of circumstances, although such issues were not the main substance of the argument presented by her counsel at trial as a basis for a change in

13

circumstances. Since testimony was presented as to these issues, we will consider whether there is a basis for a finding of a change in circumstances based on these issues.

{¶46} Initially, we note that Clough cites case law and provides argumentation that interference with visitation constitutes a change of circumstances. However, even by Clough's own assertions, Cireddu did not deny her court ordered visitation time but merely did not grant her requests for switching of visitation dates or times or did not afford her extra visitation. This does not constitute an interference with visitation, since Cireddu is not required to accommodate Clough's requests for changes in visitation which is set forth in the court orders. In addition, there was testimony presented that Cireddu did offer extra visitation on several occasions, including after the birth of Clough's third child, A.C.

{¶47} Clough argues that the failure of Cireddu to provide information such as school or medical records and dates of certain children's events constituted a change of circumstances. However, there was no finding by the lower court that such a failure occurred. Cireddu testified that he tried to provide all information related to any activities, medical, or dental appointments "as quickly as is possible." He also explained that Clough has access to all medical or academic information as the children's mother. This was sufficient for the court to determine that Clough was receiving information and that no change in circumstances occurred, especially given that the credibility of the parties is for the trier of fact to determine. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Moreover, Clough was able to obtain many of the requested records directly though the school or from Cireddu at some point, and we cannot find that the matter constituted a change in circumstances. *See Foos v. Foos*,

14

6th Dist. No. WD-11-005, 2012-Ohio-1234, ¶ 40 (while "appellant is entitled to be informed of her children's education and medical treatment, * * * there is no statutory requirement that the residential parent provide information available to the nonresidential parent from other sources").

{¶48} Clough also takes issue with Cireddu providing certain medical treatment to the children, although he is a doctor, and not initially having the children receive dental care. Cireddu's mother testified that the children were in good health and that when a medical issue arose that needed further treatment, Cireddu took the children to a pediatrician or an allergist. Again, however, there was no finding by the court or evidence presented that any medical care provided by Cireddu or his choice of when to take the children to the doctor impacted the children in any negative or adverse way or in a manner that would rise to a change in circumstances. *See In re S.B.*, 2011-Ohio-1162, at ¶ 92, citing *Hinton v. Hinton*, 4th Dist. No. 02CA54, 2003-Ohio-2785, ¶ 14-29 (the trial court did not err in finding no change of circumstances occurred when there were ongoing disputes between the parties regarding the children's health).

{¶49} Regarding Cireddu's failure to use the children's correct surname, there is no evidence as to how this constitutes a change in circumstances. The surname change occurred during the course of the proceedings and was finalized after the custody decision. Cireddu testified that after the court issued its decision, he stopped using Cireddu as the children's last name on documents. Including the wrong name on a few applications or personal items such as J.C.'s dance clothing and programs, does not rise to the level of a change in circumstances. These small arguments are of the type that are to be avoided, since they are slight or inconsequential. *See Davis,* 77 Ohio St.3d at 418, 674 N.E.2d 1159 ("the change must be a change of substance,"

15

especially given that "[t]he clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment"). To the extent that Cireddu does not follow the court's direction to use the appropriate surname, there are other methods of addressing this issue. Not every dispute between the parties warrants a finding that a change in circumstances occurred for the purposes of modifying custody.

{¶50} Finally, Clough argues that she had difficulty exercising court ordered telephone contact with the children. For similar reasons as explained above, we cannot find that the few occasions where Cireddu admitted that the children were at an activity or asleep and could not talk on the phone rise to the level of a change of circumstances or a substantial change.

{¶51} The second assignment of error is without merit.

{¶52} In her third assignment of error, Clough argues that the trial court erred by failing to consider the best interests of the children. We disagree.

{¶53} This court has held that when a party seeking a modification of custody fails "to prove a change of circumstances had occurred since the prior decree, * * * the trial court was not obliged to continue on with a best interests analysis." *Haskett*, 2013-Ohio-145, at ¶ 39; *Stevenson v. Kotnik*, 11th Dist. No. 2010-L-063, 2011-Ohio-2585, ¶ 46 (a best interests determination under R.C. 3109.04(E)(1)(a) is "not made unless and until a change of circumstances has been shown"); *Lehman v. Lehman*, 11th Dist. No. 95-T-5327, 1997 Ohio App. LEXIS 716, *8 (Feb. 28, 1997). As discussed in the prior assignment of error, there was no change in circumstances and, therefore, the lower court did not need to proceed further in its analysis.

16

{¶54} While Clough emphasizes the importance of evaluating the children's best interest in a custody determination, the law clearly sets forth that the change of circumstances factor must be proven for the court to make a ruling that alters its prior custody determination. To the extent that Clough argues that the threshold for a change of circumstances was too high and therefore prevented the judge from modifying custody that was necessary for the best interest of the children, this issue has been considered in the previous assignment of error.

{¶55} The third assignment of error is without merit.

{¶56} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, denying Clough's Motion for Allocation of Parental Rights and Responsibilities/Motion for Shared Parenting, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.