[Cite as *In re J.C.*, 2024-Ohio-343.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE J.C., ET AL. | : | |
| Minor Children | : | |
| | | Nos. 112898 and 112899 |
| [Appeal by S.Y.C., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. CU-16101850 and CU-16101851

---

***Appearances:***

Jay F. Crook, Attorney at Law, LLC, and Jay F. Crook, *for appellant*.

Hans C. Kuenzi Co., L.P.A., and Hans C. Kuenzi, *for appellee*.

SEAN C. GALLAGHER, J.:

{¶ 1} S.Y.C. ("Mother") appeals the trial court's decision denying three motions to hold J.V.C. ("Father") in contempt for failing to comply with terms of the visitation orders. In general, the denial of a motion to show cause or contempt is not an appealable order unless the party seeking contempt can demonstrate

prejudice from the denial of the motion. *In re Chapman*, 8th Dist. Cuyahoga No. 78296, 2001 Ohio App. LEXIS 2769, 8 (June 21, 2001), citing *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 17, 520 N.E.2d 1362 (1988), and *State ex rel. Boston v. Tompkins*, 10th Dist. Franklin No. 96APEO4-429, 1996 Ohio App. LEXIS 4287 (Sept. 30, 1996). That black-letter law does not impact appellate jurisdiction. The denial or dismissal of a motion for contempt is otherwise reviewable as a final appealable order. *Barry v. Rolfe*, 8th Dist. Cuyahoga No. 86801, 2006-Ohio-1833, ¶ 12. The sole question is whether the appellant essentially has standing to appeal the judgment, which is established through demonstrating prejudice from the denial or dismissal of the contempt proceedings. Mother has failed to present any argument demonstrating prejudice in this case, and based on the following, this appeal is dismissed.

{¶ 2} The better part of the last two decades have been spent fighting over custody and visitation issues regarding the two children, J.C. and G.C., born in January 2006 and December 2008, respectively. [*J.V.C.*] *v.* [*S.Y.C.*], 11th Dist. Lake No. 2010-L-008, 2010-Ohio-5401 ("*J.C. I*"), *appeal not accepted*, 128 Ohio St.3d 1413, 2011-Ohio-828, 942 N.E.2d 385; [*J.V.C.*] *v.* [*S.Y.C.*], 11th Dist. Lake No. 2011-L-121, 2012-Ohio-2242 ("*J.C. II*"); [*J.V.C.*] *v.* [*S.Y.C.*], 11th Dist. Lake No. 2012-L-048, 2012-Ohio-4338 ("*J.C. III*"), *appeal not accepted,* 134 Ohio St.3d 1508, 2013-Ohio-1123, 984 N.E.2d 1102; [*J.V.C.*] *v.* [*S.Y.C.*], 11th Dist. Lake No. 2012-L-103, 2013-Ohio-2042 ("*J.C. IV*"), *appeal not accepted,* 137 Ohio St.3d 1441, 2013-Ohio-5678, 999 N.E.2d 696; [*J.V.C.*] *v.* [*S.Y.C.*], 11th Dist. Lake No. 2013-L-092,

2014-Ohio-2454 ("*J.C. V*"), *appeal not accepted*, 139 Ohio St.3d 1484, 2014-Ohio-3195, 12 N.E.3d 1230; *In re J.C.*, 8th Dist. Cuyahoga Nos. 107292 and 107294, 2019-Ohio-107 ("*J.C. VI*"); *In re G.C.*, 8th Dist. Cuyahoga No. 109969, 2021-Ohio-2442; *In re J.C.*, 8th Dist. Cuyahoga Nos. 109745 and 109746, 2021-Ohio-2450 ("*J.C. VII*"); *In re J.C.*, 8th Dist. Cuyahoga Nos. 109747 and 109748, 2021-Ohio-2451 ("*J.C. VIII*"); *In re J.C.*, 8th Dist. Cuyahoga Nos. 111077, 111078, 111149, 111150, 111151, and 111152, 2022-Ohio-3326, ¶ 23 ("*J.C. IX*").

**{¶ 3}** In addition to the above direct appeals, Mother filed an unsuccessful federal court action seeking both a stay of the Lake County actions then pending and ordering the state court to conduct a new trial. [*S.Y.C. v. J.V.C.*], N.D.Ohio No. 1:11 CV 1202, 2011 U.S. Dist. LEXIS 131196, 1 (Nov. 14, 2011). Beyond that, Mother filed three meritless affidavits seeking to disqualify the particular juvenile court judge presiding over the case: *J.C. v. S.C. (In re Lawson)*, 135 Ohio St.3d 1243, 2012-Ohio-6337, 986 N.E.2d 6; *In re Disqualification of Floyd*, 164 Ohio St.3d 1242, 2021-Ohio-2820, 173 N.E.3d 529; *In re Disqualification of Floyd*, 166 Ohio St.3d 1252, 2022-Ohio-919, 187 N.E.3d 579. In the latest disqualification case, Mother argued that disqualification of the judge then presiding over the matter was necessary because

> (1) the judge predetermined a custody and visitation issue, (2) the judge failed to comply with orders from the Eighth District Court of Appeals, (3) the judge has failed to control her docket, leading to delays in the underlying cases, (4) the judge has shown contempt toward the mother and [her attorney], (5) the judge's actions have, when taken together, violated the mother's due-process rights, and (6) the judge engaged in an impermissible ex parte communication with the father and the

> father's counsel on December 28, 2021, before the judge's interview of the parties' children.

*Id.* at ¶ 2.[1] The Ohio Supreme Court denied all of the affidavits of disqualification.

{¶ 4} And finally, Mother filed several complaints for writs of procedendo and mandamus seeking to compel the juvenile court judge to issue rulings on several outstanding motions, including the three at issue in this appeal, or seeking to force the juvenile court judge to recuse. [*S.Y.C.*] *v. Lawson*, 11th Dist. Lake No. 2012-L-118, 2012-Ohio-5831, ¶ 5; *State ex rel. S.Y.C.*, 8th Dist. Cuyahoga No. 112565, 2023-Ohio-2395; *see also State ex rel. S.Y.C. v. Floyd*, 2021-Ohio-3467, 177 N.E.3d 1046 (8th Dist.); *State ex rel. S.Y.C. v. Floyd*, 8th Dist. Cuyahoga No. 109602, 2020-Ohio-5189. The writs, all except for 2021-Ohio-3467, were dismissed.

{¶ 5} The sheer amount of monetary and judicial resources spent on this matter is staggering.

{¶ 6} But beyond the appeals and original actions and as is pertinent to the procedural posture of this appeal, at the hearing preceding the judgment entry that is the subject of this appeal, the parties discussed a domestic relations court-issued protection order that was filed on behalf of the children against Mother. That separate case stemmed from an incident between Mother and J.C. that required police officers to respond and the involvement of the Department of Child and

---

[1] Mother's arguments in this appeal continue those same arguments; for example, accusing the trial court of predetermining issues after making rulings and violating Mother's due process rights.

Family Services.[2] Although the permanent protection order was ultimately denied, the domestic relations court evidently issued a temporary protection order that impacted Mother's visitation schedule to some degree during the summer of 2022. During the hearing on the motions underlying this appeal, the juvenile court was told that the temporary protection order entered against Mother was enforced from May through July 2022. Mother did not challenge that assertion, much less has she even acknowledged the impact of that separate litigation. Importantly, Mother failed to identify anything in the record dispelling the juvenile court's conclusion.

{¶ 7} As one can imagine in light of that extensive history, the juvenile court's docket is lengthy and replete with motions, several of which were held in abeyance pending further hearings at the time of this appeal. Given the current procedural posture and the nuanced history giving rise to the current appeal, we need not dwell on the entirety of facts underlying this dispute.

{¶ 8} It suffices that beginning in December 2021, Mother filed a series of motions to hold Father in further contempt for his alleged involvement in interfering with Mother's visitation schedule as to which there have been several modifications. The latest modification occurred on November 17, 2021, which resulted in Mother's visitation time with the children being retroactively reduced, although the order included a finding that Father was in contempt for failing to comply with the court-ordered parenting time up to the date of the order. That was the subject matter of

_____

[2] An abuse allegation was initially substantiated, but the social worker determined that the claim for excessive punishment was lacking evidentiary support after reviewing the totality of the evidence presented.

the dispute resolved in *J.C. IX*. In that appeal, Mother challenged the juvenile court's decisions denying her custody of J.C. and G.C., decreasing her visitation with them, failing to award attorney fees on the contempt finding, and making errors in the calculation of child support. Father cross-appealed the trial court's contempt order and child support calculations. *Id.* at ¶ 2. The panel reversed in part, concluding that the imposition of attorney fees awarded on the contempt finding against Father and the support calculation required further attention. All other aspects of the November 17, 2021 judgment entry were affirmed. *See generally id.*

{¶ 9} Following the November 2021 modification of the visitation schedule, Mother filed three motions to show cause and to compel Father to provide "makeup visitation" for both children. In December 2021, Mother filed the first of the three based on Mother's missing several visitations with the children between April 21, 2021, and November 17, 2021. The visitation dates were expressly based on the September 2013 visitation order that had already been retroactively modified by the time of the motion. Further, that date range was the subject matter of the contempt proceedings resolved in *J.C. IX*, including the finding of Father's contempt for interfering with Mother's right to visitation and the sanction imposed thereon. *Id.*

{¶ 10} In July 2022, Mother filed another motion discussing alleged visitation issues between May 22, 2022, and July 17, 2022, but that motion also included the earlier dates from the December motion. During the summer of 2022 time frame, however, Mother's visitation rights were suspended by the domestic relations court through a temporary order of protection issued, at least according to

the parties' discussion of the matter and Father's motion to suspend Mother's parenting time filed during that time frame.

{¶ 11} In the final contempt motion, filed on May 11, 2023, Mother tacked on additional dates up through December 21, 2022, again incorporating all the prior dates into the latest motion. It was also averred that Mother was denied "midweek access" to G.C. on December 28, 2022, and denied "extended parenting time" with G.C. on September 11 – 16, 2022, October 30 – November 4, 2022, November 25 – December 2, 2022, and December 19 – 21, 2022; all of which total 25 missed visitation days.

{¶ 12} All three motions sought an order imposing "makeup visitation" with the children and attorney fees for the costs of filing the motions. On May 22, 2023, the juvenile court denied all three motions following the hearing. It is from this order that Mother now appeals.

{¶ 13} Mother's request to hold Father in contempt is expressly designed to secure future visitation with J.C. and G.C. This impacts the lens in which contempt proceedings are reviewed.

{¶ 14} Courts designate contempt as being either civil or criminal in nature. "If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil" in nature. *Denovchek*, 36 Ohio St.3d at 16, citing *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). The "primary interest involved in a contempt proceeding is the authority and proper functioning of the court, [and therefore,] great reliance should

be placed upon the discretion of the trial judge." *Id.*, citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Notwithstanding the standard of review and as already harped on, "there is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." *Id.* at 17.

{¶ 15} In *Ohio Patrolmen's Benevolent Assn. v. Cuyahoga Cty. Sheriff*, 8th Dist. Cuyahoga No. 79391, 2001 Ohio App. LEXIS 5527 (Dec. 13, 2001) ("OPBA"), the panel, relying on *Denovchek,* provided the analysis resolving whether the appellant demonstrated prejudice to overcome the general proposition of law citing two earlier decisions from this district. *Barry v. Rolfe*, 8th Dist. Cuyahoga No. 86801, 2006-Ohio-1833, ¶ 6-7. The panel in OPBA drew heavily from *Chapman*, 8th Dist. Cuyahoga No. 78296, 2001 Ohio App. LEXIS 2769 (June 21, 2001), in which the panel concluded that a denial of a motion to hold the trustee of an estate in contempt was prejudicial "because it prevented a finding that the trustee of the estate was acting in contravention of a court order" allowing the fiduciary to continue concealing assets belonging to the estate. *Id.* In another example, *Yonkings v. Wilkinson*, 86 Ohio St.3d 225, 714 N.E.2d 394 (1999), the denial of the motion for contempt was deemed to be prejudicial based on other aspects of the denial; that order was appealable because that denial affected a substantial right of the appellant. In *Yonkings*, the Ohio Supreme Court concluded that "the trial court's order did not merely deny appellant's motion to find appellees in contempt. Instead, the judgment entry ordered appellees to correct appellant's record regarding his

sentence." *Id.*, citing R.C. 2505.02(B)(1) and *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 526, 709 N.E.2d 1148 (1999). Thus, prejudice in this context is defined as identifiable future harm directly tied to the decision to deny or dismiss the contempt proceedings.

{¶ 16} Mother has not discussed, much less acknowledged, this general proposition of law. *See* App.R. 16(A)(7). In her contempt proceedings, Mother asserts claims for past misconduct, but cites no future harm that will arise following the dismissal of the contempt proceedings against Father. Instead, in four separate assignments of error, she focuses on her right to due process allegedly deprived by the manner in which the juvenile court resolved the pending issue, including several blanket allegations of bias and the appearance of predetermined decisions by the juvenile court, issues Mother unsuccessfully advanced in her affidavits of disqualification. According to Mother, the juvenile court abused its discretion by failing to offer Mother an opportunity to present evidence demonstrating Father's past interference with her parenting time. She further explains that the juvenile court did not provide notice that evidence would be taken on the contempt issue at the hearing. None of those arguments, however, demonstrate that Mother was prejudiced by the ultimate denial of the three contempt motions directed at Father.

{¶ 17} At the onset of the analysis, it must be acknowledged that J.C. reached the age of majority during this appeal. Mother has agreed that contempt proceedings are meant to ensure that future visitation will not be impeded, citing *J.C. IX* at ¶ 72, and that her motions to hold Father in contempt are seeking "makeup

visitation" as a remedy to purge that alleged civil contempt. The juvenile court, however, no longer has jurisdiction over J.C. with respect to imposing visitation requirements since J.C. is no longer a child as statutorily defined. R.C. 3109.01; *Sullivan v. Sullivan*, 2d Dist. Montgomery No. 28848, 2020-Ohio-5036, ¶ 17. Juvenile court control over parenting time does not extend past the age of majority. *In re S.S.*, 2d Dist. Montgomery No. 26997, 2016-Ohio-7328, ¶ 8. The issue of Mother's visitation rights with respect to J.C. is no longer ripe for review. J.C. now "has the right to decide for herself whether, and when, she wants to spend time with" Mother. *Id.*

{¶ 18} "[B]ecause the purpose of a civil contempt motion is to compel compliance with the court's order rather than to punish disobedience, when compliance becomes moot, the contempt proceeding is also moot." *Robinette v. Bryant*, 4th Dist. Lawrence No. 14CA28, 2015-Ohio-119, ¶ 47; *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265, (2001). There is no remedy to be afforded with regard to the visitation issues involving J.C., which comprise the vast majority of the past visitation issues cited in Mother's motions. The purpose of holding Father in contempt for the alleged noncompliance with the visitation order is to ensure that J.C. will be available for Mother's visitation in the future. Since J.C. is no longer a child, the juvenile court lacks jurisdiction to impose any further visitation requirements with respect to J.C. Their relationship is up to them to develop of their own accord. No court can force that relationship to occur. The contempt proceedings against Father, as pertaining to J.C., are now moot.

{¶ 19} G.C., however, has not yet reached the age of majority. Although the majority of Mother's allegations pertain to missed visitation with J.C., a portion of the alleged dates involved G.C. Mother alleges that she was denied "midweek access" to G.C. on December 28, 2022, and denied "extended parenting time" with G.C. on September 11 – 16, 2022, October 30 – November 4, 2022, November 25 – December 2, 2022, and December 19 – 21, 2022; all of which total 25 days.

{¶ 20} Mother also alleged that her visitation rights with G.C. were interfered with between (1) July 11 – 18, 2021, August 8 – 15, 2021, and November 14 – 17, 2021; and (2) May 18 – 22, 2022, May 30, 2022, June 2 – 9, 2022, and July 6 – 13, 2022. The issue with respect to the 2021 date range was resolved in *J.C. IX*, through affirmance of the finding of contempt against Father and the sanctions imposed thereon. *Id.* Father was already found in contempt and punished. Mother's attempt to relitigate the contempt issue resolved in *J.C. IX* for the missed visitation before November 2017, and based on a visitation order no longer in effect at the time she filed her motion for contempt, cannot lead to a finding of prejudice. She was offered relief, and Father was punished through the award of attorney fees. No more can be accomplished.

{¶ 21} The 2022 date ranges involved a time period during which the domestic relations court's protection order was effective, as extensively discussed throughout the lower court's proceedings. Mother's visitation rights were suspended during that time frame or, at the least, impacted by the temporary protection order then in place. Importantly, she has not demonstrated otherwise by

pointing to anything in this record, much less has she even acknowledged the impact of the domestic relations court proceeding on her visitation rights until pressed at oral argument. Mother is essentially asking the juvenile court to hold Father accountable for the actions of the domestic relations court. And although she claimed that the domestic relations court action was frivolous, she did not timely litigate that question in that court.[3] And regardless, because contempt proceedings are meant to ensure future visitation, Father's inability to comply with the visitation orders based on the domestic relations court's order will not be a factor moving forward.

{¶ 22} Finally, Mother has not demonstrated any ongoing prejudice from the trial court's decision denying her May 2023 motion for contempt pertaining to the allegations of the 25 days of missed visitation with G.C. during the fall of 2022. There had been no allegations of G.C. missing any required visitation in 2023 as of the most recent motion seeking to hold Father in contempt, demonstrating that the issues with G.C.'s visitation were resolved as of the date the latest motion for contempt was filed. Her allegations and current arguments are aimed at punishing for past conduct, not preventing future harms. Given the civil nature of the contempt proceedings, that is not appropriate in this particular case.

{¶ 23} Further, Mother's conduct in this case has demonstrated that there will be vigilant monitoring of G.C.'s visitation schedule for the remaining years of

---

[3] The juvenile court rightly rejected Mother's attempt to litigate the frivolity question arising from the domestic relations court's action in the underlying case.

his adolescence. Should any further issues arise as to G.C., although not those that arise from his own wishes, Mother will have the opportunity to request the juvenile court's intervention. As it stands, Mother has not demonstrated any prejudice from the dismissal of the contempt proceedings.

{¶ 24} The merits of Mother's four assignments of error cannot be reviewed because the denial of a motion for contempt cannot be appealed unless the appellant demonstrates prejudice. *See Woods v. Moore*, 8th Dist. Cuyahoga No. 108542, 2020-Ohio-110, ¶ 6. Because Mother has not demonstrated prejudice, this appeal must be dismissed.

{¶ 25} In light of the pending and unresolved motions at the time of the appeal, this matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellee recover of appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR