[Cite as *In re J.C.*, 2025-Ohio-4753.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE J.C., ET AL.                    :

Minor Children                        :                    Nos. 114694 and 114711

[Appeal by S.Y.C., Mother]            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 16, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. CU16101850 and CU16101851

---

### *Appearances:*

P. Shipman Law, LLC, and Philip E. Shipman, *for appellant*.

Hans C. Kuenzi, Co., L.P.A., and Hans C. Kuenzi, *for appellee*.

MICHAEL JOHN RYAN, J.:

{¶ 1} This appeal is relative to proceedings involving appellant S.Y.C. (Mother) and appellee J.V.C. (Father), who were never married. They have two children: J.C. and G.C. The cases involving each child have been consolidated for review and disposition.

{¶ 2} In December 2009, Father was designated the residential parent and legal custodian of the children.  Since that time, the parties have ceaselessly fought over custody, child support, and visitation issues regarding the children in two county court systems.[1]  Mother has also filed an unsuccessful federal court action. She has filed meritless affidavits seeking to disqualify the trial judges in both counties.[2]  Finally, Mother has filed several petitions for extraordinary writs in both counties.[3]

{¶ 3} In May 2023, the court issued two orders disposing of various motions.  On May 11, 2023, the juvenile court ordered that Mother pay child support in the amount of $80.00 per child and $242.75 total per month for cash medical support.  Specifically, the order stated that Mother "shall pay child support in the amount of $80.00 per month per child (including $242.75 per month for cash

---

[1] *See* [*J.V.C.*] *v.* [*S.Y.C.*], 2010-Ohio-5401 (11th Dist.); [*J.V.C.*] *v.* [*S.Y.C.*], 2012-Ohio-2242 (11th Dist.); [*J.V.C.*] *v.* [*S.Y.C.*], 2012-Ohio-4338 (11th Dist.); [*J.V.C.*] *v.* [*S.Y.C.*], 2013-Ohio-2042 (11th Dist.); [*J.V.C.*] *v.* [*S.Y.C.*], 2014-Ohio-2454 (11th Dist.); *In re J.C.*, 2019-Ohio-107 (8th Dist.); *In re G.C.*, 2021-Ohio-2442 (8th Dist.); *In re J.C.*, 2021-Ohio-2450 (8th Dist.); *In re J.C.*, 2021-Ohio-2451 (8th Dist.); *In re J.C.*, 2022-Ohio-3326 (8th Dist.); *In re J.C.*, 2024-Ohio-343 (8th Dist.).

[2] *See* [*S.Y.C. v. J.V.C.*]*,* 2011 U.S. Dist. LEXIS 131196 *(*N.D. Ohio Nov. 14, 2011*); J.C. v. S.C. (In re Lawson)*, 2012-Ohio-6337; *In re Disqualification of Floyd*, 2021-Ohio-2820; *In re Disqualification of Floyd*, 2022-Ohio-919; *In re Disqualification of Floyd*, Supreme Court Case No. 23-AP-120 (Oct. 6, 2023).

[3] *See* [*S.Y.C.*] *v. Lawson*, 2012-Ohio-5831 (11th Dist.); *State ex rel. S.Y.C. v. Floyd*, 2018-Ohio-2743 (8th Dist.); *State ex rel. S.Y.C. v. Floyd*, 2020-Ohio-5189 (8th Dist.); *State ex rel. S.Y.C. v. Floyd*, 2021-Ohio-3467 (8th Dist.); *State ex rel. S.Y.C. v. Floyd*, 2023-Ohio-2395 (8th Dist.), *aff'd*, 2024-Ohio-1387.

medical support for both children) per month + 2 percent processing fee for a total of $81.60 to OCSS."[4]  Neither party appealed the court's May 11, 2023 order.

{¶ 4}  On May 22, 2023, the trial court issued orders denying Mother's motions to hold Father in contempt.  Mother appealed the court's May 22, 2023 decisions, which this court dismissed for lack of a final, appealable order.  *In re J.C.*, 2024-Ohio-343 (8th Dist.).

{¶ 5}  On July 9, 2024, the trial court held a hearing on several motions.  On December 2, 2024, the trial court entered orders granting Father's motion to clarify parenting and vacation time and denying Mother's motion to strike Father's motion to clarify and motion to stop cash medical payments.

{¶ 6}  This appeal followed.

{¶ 7}  Mother raises 12 assignments of error.  The assignments of error are listed in the attached appendix and will be combined when possible for review.

**Cash Medical Support**

{¶ 8}  The first eight assignments of error involve the trial court's denial of Mother's motion to stop cash medical payments.

{¶ 9}  "'A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion.'" *In re J.C.*, 2022-Ohio-3326, at ¶ 82 (8th Dist.), quoting *J.E.M. v. D.N.M.*, 2021-Ohio-67, ¶ 22 (8th Dist.), citing *Booth v. Booth*, 44 Ohio

---

[4] Office of Child Support Services

St.3d 142 (1989). "The trial court has considerable discretion in child support matters; absent an abuse of discretion, we will not disturb a child support order." *In re J.C.*, 2022-Ohio-3326, at *id.*, citing *J.E.M.* at *id.*, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997).

{¶ 10} R.C. 3119.30(C) provides:

> When a child support order is issued or modified, the order shall include a cash medical support amount consistent with division (B) of section 3119.302 of the Revised Code for each child subject to the order. The cash medical support amount shall be ordered based on the number of children subject to the order and split between the parties using the parents' income share.

{¶ 11} On May 11, 2023, the juvenile court issued orders as to both children regarding child support, including cash medical support. In those orders, the court found that Mother was the obligor and Father was the obligee. The court determined a deviation as to child support should be made and ordered child support in the amount $80.00 per month per child effective May 7, 2021. The court further found the Mother was obligated to pay cash medical support totaling $242.75 per month. Based on this amount, the court determined in its December 2, 2024 order that Father had received overpayment in the amount of $4,673.51 for J.C. and $4,181.18 for G.C. and owed those amounts to Mother.

{¶ 12} Mother contends that the plain language of the court's May 11, 2023 orders were that Mother was only obligated to pay $80.00 per month per child, plus a processing fee, for a total of $81.60 per month per child. Therefore, according to Mother, the trial court erred in its December 2, 2024 orders when it stated that

Mother was obligated to pay cash medical support in the amount of $242.75 per month. Thus, according to Mother, the court's December 2, 2024 orders should be vacated and remanded to the juvenile court for the court to recalculate the overpayment of Mother's child support using $0.00 as the amount of cash medical support.

{¶ 13} "Cash medical support" is an amount ordered to be paid in a child-support order toward the ordinary medical expenses of a child incurred during a calendar year. R.C. 3119.01(C)(2). The trial court's May 11, 2023 orders stated that Mother "shall pay child support in the amount of $80.00 per month per child (including $242.75 per month for cash medical support for both children) per month + 2 percent processing fee for a total of $81.60 to OCSS . . . ." The child support worksheet attached to the entries for each child stated that the cash medical support per month was $242.75. The record reflects that OCSS began to withhold that amount from Mother's paychecks after the orders were issued.

{¶ 14} In *In re J.C.*, 2022-Ohio-3326, at ¶ 88 (8th Dist.), this court found that the trial court incorrectly determined the amount of child support Mother was to pay to Father, finding that "[t]he trial court failed to address the disparity between Father's and Mother's income and also failed to determine the child support obligation using the correct standard." This court remanded the case to the juvenile court to determine the amount of child-support obligation using the correct standard.

{¶ 15} On remand, the juvenile court determined that a deviation in child support was necessary and reduced Mother's obligation from $1,437.33 per month per child to $80.00 per month per child. (May 11, 2023 judgment entries.) The court made no deviation as to the cash medical support.

{¶ 16} Although the trial court's May 11, 2023 orders could have been more clearly set forth, the orders provided that Mother was to pay $80.00 in child support, plus a two percent processing fee, per month, per child. In addition, Mother was ordered to pay a $242.75 in cash medical support, plus a two percent processing fee. In case Mother had any doubts about what she owed, the child support worksheet attached to the orders also indicated that Mother was obligated to pay $242.75 in cash medical support for the children.

{¶ 17} Although Mother is arguing that the trial court incorrectly calculated the amount of repayment she owed, her claim stems solely from the court's May 11, 2023 orders determining the amount of cash medical support. In other words, Mother does not argue that the office of child support services or the trial court incorrectly calculated the overpayment.

{¶ 18} Although Mother now challenges the amount of cash medical support, she had the opportunity to challenge the amount when it was first ordered through the filing of a direct appeal. She did not.

{¶ 19} The record reflects that Mother is attempting to bootstrap this appeal by challenging the juvenile court's December 2, 2024 denial of Mother's motion to stop cash medical payments.

"'Bootstrapping' is 'the utilization of a subsequent order to indirectly and untimely appeal a prior order that was never directly appealed.' *State v. Williamson*, 8th Dist. Cuyahoga No. 102320, 2015-Ohio-5135, ¶ 9. Such attempt is 'procedurally anomalous and inconsistent with the appellate rules that contemplate a direct relationship between the order from which the appeal is taken and the error assigned as a result of that order' and is disfavored." *Williamson*, citing *State v. Church*, 8th Dist. Cuyahoga No. 68590, 1995 Ohio App. LEXIS 4838 (Nov. 2, 1995).

*State v. Streets*, 2025-Ohio-2598, ¶ 11 (8th Dist.), quoting *Cleveland v. Sabetta*, 2021-Ohio-4426, ¶ 16 (8th Dist.).

{¶ 20} In *Streets*, the appellant pleaded guilty to sexual imposition, was sentenced to a suspended sentence, and was placed on community-control sanctions, which included participation in a pilot program. The appellant's electronic devices were subject to monitoring as part of the pilot program. The appellant did not file a direct appeal but later filed a motion to modify the conditions of his probation to eliminate the monitoring of his electronic devices. The trial court denied his motion. The appellant appealed the denial of the motion to modify, arguing that the trial court erred when it ordered him to take part in the pilot program. *Id*. at ¶ 5.

{¶ 21} This court found that the appellant's core argument related to an error in the imposition of community-control sanctions, not in the denial of the motion to modify. As such, the appellant was attempting to bootstrap his appeal by challenging the trial court's denial of his motion to modify conditions of community control. This court concluded that the appellant's arguments were barred by res judicata and the court did not have jurisdiction to consider his appeal. *Id*. at ¶ 12.

{¶ 22} Likewise, in this case, the trial court issued a cash medical support order in its May 11, 2023 journal entries. Mother did not file a direct appeal of the court's orders. Instead, Mother improperly uses the court's December 2, 2024 orders regarding the calculation of overpayment to try and challenge the May 11, 2023 orders setting the amount of cash medical support.

{¶ 23} "'Res judicata bars the consideration of issues that could have been raised on direct appeal.'" *Streets* at ¶ 10, quoting *Sabetta* at ¶ 17. Because Mother's claims in the present appeal pertain to a purported error in the imposition of cash medical support, they are untimely and barred by the doctrine of res judicata.

{¶ 24} Mother additionally claims that the court improperly failed to attach a child-support worksheet to its December 2, 2024 orders, failed to allocate responsibility for unreimbursed and uninsured health care expenses, issued "illegal" nunc pro tunc orders, failed to comply with this court's remand, and failed to follow the law of the case. Each of these claims are directly related to the trial court's May 11, 2023 orders and either could have been raised on direct appeal from those orders or are without merit because they are based on the incorrect assumption that the court did not order cash medical support in its May 11, 2023 entries. Accordingly, assignments of error one through eight are overruled.

**Parenting Time – G.C.**

{¶ 25} In her ninth assignment of error, Mother contends that the trial court improperly modified its visitation order as it relates to vacation and extended parenting time with G.C.[5]

{¶ 26} Mother contends that the trial court's December 2, 2024 order served as a nunc pro tunc order changing her visitation schedule.

{¶ 27} Pursuant to Civ.R. 60(A) a trial court may issue a nunc pro tunc entry to correct "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission." "The rule permits a trial court to modify a judgment if the judgment contains a clerical error, but not a substantive error," i.e., "'a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment.'" *L. Bryan Carr Co., LPA v. LaForge*, 2025-Ohio-889, ¶ 10 (11th Dist.), quoting *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100 (1996). "[N]unc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995).

{¶ 28} Mother takes issue with the court's statement in its December 2, 2024 order that "[i]n officially awarding Mother four weeks of summer vacation parenting

---

[5] J.C. reached the age of majority in January 2024.

annually, the court did not intend to also entitle Mother to six additional weeks of parenting time per year."

{¶ 29} This issue arose after Father filed a motion to clarify the court's November 17, 2021 order regarding visitation. The court held a hearing on July 9, 2024, at which Father testified that there was a disagreement whether Mother was entitled to six additional weeks of parenting time per year in addition to her four weeks of summer visitation.

{¶ 30} Ambiguity in a court order arises "'when a provision in an order or decree is reasonably susceptible of more than one meaning.'" *McCloskey v. McCloskey*, 2024-Ohio-1900, ¶ 29 (2d Dist.), quoting *McKinney v. McKinney*, 142 Ohio App.3d 604, 609 (2d Dist. 2001). If there is good faith confusion over the interpretation to be given to a particular clause of a court order, the trial court has the power to hear the matter, clarify the confusion, and resolve the dispute. *Henry v. Henry*, 2015-Ohio-4350, ¶ 8 (9th Dist.). This court reviews a trial court's clarification of a court order for an abuse of discretion. *Id.*, citing *Collette v. Collette*, 2001 Ohio App. LEXIS 3823, *6 (9th Dist. Aug. 22, 2001).

{¶ 31} The juvenile court's November 17, 2021 order ordered, in pertinent part, that Mother's parenting time included:

> 4 weeks (28 days inclusive of weekends spent for vacation) of summer/vacation parenting time annually. This parenting time may be exercised in 4-day, one week, 10-day, up to 2 week uninterrupted increments, without scheduled parenting time for the other parent. Week-long vacation must include a regularly, scheduled weekend parenting time for the vacationing parent and return of the child to the

other parent by 7:00 pm to exercise weekend parenting time with the non-vacationing parent.

{¶ 32} In its December 2, 2024 order the court clarified that Mother was entitled to "4 weeks or 28 days inclusive of weekends spent for vacation of summer/vacation parenting time," which could be exercised in "4-day, one week, 10 day or 14 day increments" and that 10-to-14-day increments could be scheduled uninterrupted. Week-long vacation time, however, was to include a regularly scheduled weekend time for the vacationing parent and return of the child to the other parent by 7:00 p.m. to exercise weekend parenting time with the non-vacationing parent. In other words, if Mother's parenting time was exercised in 10 to 14 day increments, it could be uninterrupted. But if Mother's parenting time was scheduled for seven days or one week, then that time must include a scheduled weekend parenting time for Mother and the child must then be returned to Father for him to exercise his weekend parenting time.

{¶ 33} We find that the court's December 2, 2024 order clarified, but did not modify, Mother's parenting time to explain the above. The trial court did not abuse its discretion in clarifying the terms of its prior order.

{¶ 34} Accordingly, the ninth assignment of error is overruled.

### Contempt

{¶ 35} In the tenth and eleventh assignments of error, Mother claims that the trial court erred when it denied her motions for contempt.

{¶ 36} In orders dated May 22, 2023, the trial court denied multiple motions Mother had filed against Father for contempt. The denial of those contempt motions was the basis of Mother's appeal in *In re J.C.*, 2024-Ohio-343 (8th Dist.). In *In re J.C.*, this court dismissed the appeal for a lack of a final, appealable order because Mother was unable to demonstrate she was prejudiced by the denial of her motions for contempt. *Id.* at ¶ 24.

{¶ 37} "[A]ssignments of error must relate to the judgment that is the subject of the notice of appeal." *State v. Thompkins*, 2007-Ohio-4315, ¶ 7 (10th Dist.). Mother's tenth and eleventh assignments of error involve the trial court's May 22, 2023 journal entries. The orders that are currently being appealed, which were entered on December 2, 2024, did not discuss, nor determine, any motions related to contempt.

{¶ 38} Mother's claims are therefore not properly before this court.

{¶ 39} Accordingly, the tenth and eleventh assignments of error are overruled.

## Disqualification of Juvenile Court Judge

{¶ 40} In the twelfth assignment of error, Mother claims that the trial court judge should be removed for failure to follow this court's mandate on remand. Mother's arguments center around her claims that the juvenile court judge issued a new child support ruling, changed child-support orders, and failed to ensure that Father followed visitation orders.

{¶ 41} R.C. 2701.03(A), which Mother should be acutely familiar with based on her previous filings, provides that if a judge of the court of common pleas allegedly

> has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.

{¶ 42} "An intermediate court of review does not have jurisdiction to disqualify a court of common pleas judge for bias, prejudice, or any other reason. The Ohio Supreme Court retains exclusive jurisdiction over the disqualification of judges of the courts of common pleas." *State v. Moore*, 2007-Ohio-7215, ¶ 18.

{¶ 43} Mother cites this court's opinion in *In re A.O.*, 2015-Ohio-1038 (8th Dist.) In that case, this court determined that the trial court failed to comply with this court's remand to issue legal custody of a minor to the child's grandfather. On remand, the juvenile court conducted another custody hearing and granted custody to the child's father. This court vacated the trial court's judgment awarding legal custody to the father and found that, based on the trial court's prior refusal to follow this court's mandate, that the case was to be assigned to the Juvenile Court Administrative Judge to immediately issue an order awarding the grandfather legal custody of the child. *Id.* at ¶ 14.

{¶ 44} *In re A.O.* is distinguishable because, here, Mother has not shown that the trial court failed to follow this court's remand orders in a custody situation. All

of Mother's allegations on which her claims are based — the court's child-support and visitation orders — have been addressed and are without merit or not properly before this court.

**{¶ 45}** Accordingly, the twelfth assignment of error is overruled.

**{¶ 46}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, JUDGE

EILEEN A. GALLAGHER, A.J., and
DEENA R. CALABRESE, J., CONCUR

Appendix – Mother's Assignments of Error

I. The Trial Court erred and abused its discretion unreasonably and arbitrarily by adopting the cash medical summary calculation performed by OCSS.

II. The Trial Court erred and abused its discretion unreasonably and arbitrarily by failing to comply with the remand of this Honorable Court regarding health care expenses.

III. The Trial Court erred and abused its discretion unreasonably and arbitrarily by failing to allocate responsibility for unreimbursed and uninsured health care expenses despite ORC 3119.32 and this Honorable Court's remand requiring such allocation.

IV. The Trial Court erred and abused its discretion unreasonably and arbitrarily by issuing an illegal nunc pro tunc child support order.

V. The Trial Court erred and abused its discretion unreasonably and arbitrarily by ignoring the law of the case.

VI. The Trial Court erred and abused its discretion unreasonably and arbitrarily by sua sponte modifying G.C.'s child support order without taking evidence.

VII. The Trial Court erred and abused its discretion unreasonably and arbitrarily by failing to attach a child support worksheet to its child support order.

VIII. The Trial Court erred and abused its discretion unreasonably and arbitrarily by failing to deviate the cash medical support figures.

IX. The Trial Court erred and abused its discretion unreasonably and arbitrarily by issuing an illegal nunc pro tunc visitation order.

X. The Trial Court's ruling on Father's sanctions without a hearing was a violation of mother's due process rights.

XI. The Trial Court committed reversible error in failing to follow the law of the case / judicial mandate doctrine regarding visitation.

XII. The Trial Court judge should be removed for continued failure to follow the remands of this Honorable Court.